OPINION OF THE COURT
Leonard A. Weiss, J.
I. QUESTION
Has the New York State Liquor Authority (herein called "SLA”) acted arbitrarily, capriciously or in violation of lawful procedure by denying an application for a license to operate a retail liquor store based upon its determination that public demand for liquor sales in the locality for which the license is sought is adequately served by the existing stores?
II. BACKGROUND
Petitioner, George B. Hansen, Jr., brings this CPLR article 78 proceeding to obtain a judgment annulling and setting aside a decision of the SLA which denied his application for a license to open a retail package liquor store in the James way Plaza Shopping Center on Route 9W in the Village and Town of Catskill, Greene County, and directing the SLA to issue such license to him at the proposed site.
In September, 1978, the petitioner commenced a study and survey of the retail wine and liquor outlets within Greene and Ulster Counties for the purpose of establishing a retail package store of his own. Following these initial studies, the petitioner found and concluded negotiations with the owners of what is described as a "regional shopping center on Route 9 W” in Catskill for a lease of one of the stores in the shopping center to be used for the proposed retail package outlet. On March 27, 1979, petitioner filed an application with the Greene County Alcoholic Beverage Control Board for a retail and liquor package store license to be located in the store he leased from the shopping center owners on February 10, 1979. On April 4, 1979, the petitioner’s license application was the subject of a field investigation by Beverage Control Investigator Robert Beattie. Investigator Beattie found the petitioner’s proposed store complied with the requirements and rules of the SLA and that petitioner’s financial responsibility and character were sufficient to qualify him for a retail liquor package store license. Investigator Beattie also found that the five nearest wine and liquor stores to the petitioner’s proposed site were located .35, 1.25, 1.35, 6.1 and 7.7 miles away. Other *693 observations concerning the gross dollar volume of the surrounding liquor stores, the traffic flow on Route 9W around the proposed site, and, the existence of commercial establishments which sold wine and liquor for off-premises consumption were made in Investigator Beattie’s report. The investigator’s findings were then submitted to the Greene County Alcoholic Beverage Control Board.
By letter dated April 10, 1979 to the Executive Secretary of the Greene County Alcoholic Beverage Control Board, the president of the Catskill Wine Cellar, Inc. (the existing retail package store located closest to the site of petitioner’s proposed store) said, in substance: (1) that his store was located directly across the highway from the shopping center where petitioner’s proposed store would be located, (2) that the public convenience and advantage are adequately served by his store which has a private parking lot for customers, (3) that the volume of the liquor business in the area surrounding the proposed store, "appears to be stagnated,” (4) that the addition of a new store would make the continued success of the Catskill Wine Cellar, Inc., and the other surrounding liquor stores "doubtful” and (5) "the advent of another store in the same neighborhood would more than likely eliminate any net profit from either store, and also precipitate laying off of one or more of our employees.” No other written protests to the petitioner’s proposed license application were received by the Greene County Alcoholic Beverage Control Board. On April 24, 1979, the Greene County Board recommended that the petitioner’s license application be disapproved and forwarded the application and investigation documents to the SLA’s Albany office.
At petitioner’s request, on May 25, 1979, a hearing before Deputy Commissioner J. Richard Fitzgerald of the SLA was held in Albany, New York, in accordance with the provisions of section 54 of the Alcoholic Beverage Control Law and Rules of the State Liquor Authority (9 NYCRR Part 52). At the hearing petitioner introduced numerous exhibits and offered testimony in an effort to show that the Greene County Alcoholic Beverage Control Board did not consider the fact that petitioner’s proposed store was to be located in a county-wide shopping center and would offer its products to customers other than the residents of the Town of Catskill. Petitioner also informed the hearing officer that the contemplated store would offer different types of alcoholic beverages to the public *694 than were being offered by the existing stores in the Catskill area. Petitioner offered his eight years of experience as a solicitor for a retail wine wholesale distributor in Guilderland Center, New York, in explanation of the more extended contact he would have with distributors who could supply the public with alcoholic beverages different from those sold in the other Catskill retail liquor stores. At the hearing, petitioner also offered the observations that the Catskill Wine Cellar, Inc., store located across from the shopping center posed a potential traffic hazard because its customers had to exit and enter quickly from the parking lot onto the apparently heavily traveled Route 9W. Petitioner also emphasized that the nature of his business as a discount retail store would not compete with the other Catskill retail liquor stores which did not operate on a large volume basis.
On June 7, 1979, SLA Deputy Commissioner Fitzgerald prepared a summary of the proceedings held before him which included all of petitioner’s arguments. On June 8, 1979, SLA Deputy Commissioner Thomas H. Gorman recommended disapproval of petitioner’s application and forwarded the application to the SLA Package Store Unit, Zone 1, New York office. SLA Deputy Commissioner Roman S. Lapinski then prepared a digest of the application for the members of the SLA.
On August 8, 1979, the SLA met and disapproved the petitioner’s application on the basis that the "public convenience and advantage” would not be served. Petitioner was informed of this decision by telegram dated August 9, 1979. On August 21, 1979, an order of disapproval was forwarded to the petitioner by the SLA. In the order of disapproval, the SLA offered the following reasons: (1) the Greene County Alcoholic Beverage Control Board has recommended disapproval of this application; (2) the Village of Catskill has a population of 5,300 persons in the last census; (3) the authority found that the three established licensed package stores located in the Village of Catskill, the furthest being 1.3 miles from the site of petitioner’s store, were adequate to serve the area in which the proposed premises are located. In its reasons for denying petitioner’s application, the SLA did not consider the reasons in support of the application advanced by petitioner at the hearing nor did it consider a letter from the Supervisor for the Town of Cairo in support of petitioner’s application.
This proceeding was brought to review the SLA order dated *695 August 21, 1979 in accordance with section 121 of the Alcoholic Beverage Control Law providing for review by the court of the SLA’s refusal to issue a license or permit.
III. parties’ contentions
A. Petitioner’s Contentions
Petitioner alleges that the SLA’s conclusion that the existing area is adequately served by the existing retail package stores does not take into consideration the fact that petitioner’s proposed store will be located "in the largest shopping center in Greene County in which there is no license package store”. Petitioner also alleges that the SLA failed to adequately consider the unique nature of petitioner’s proposed store when compared to the product lines and size of the existing stores and, failed to consider that petitioner will be an owner/operator whereas the existing package stores are allegedly operated by absentee owners, a difference which petitioner believes will make him uniquely better able to serve the public demand for retail liquor sales.
Petitioner also advances the legal argument that the issuing of a wine and liquor license in regional shopping centers has been held to be in the public convenience and advantage. Petitioner alleges that the fear of increased economic competition is no longer a legally sufficient basis upon which to justify administrative disapproval of a liquor license application. Finally, petitioner urges that the distance in proximity to existing package store locations have been removed as lawful grounds for the disapproval of an application for a new license.
B. Respondents’ Contentions
Respondents contend that the State Liquor Authority made an adequate investigation of the underlying application and gave specific individualized reasons as to why they would not grant petitioner the liquor license requested. Respondents’ primary argument is that petitioner has failed to meet his burden to show "that the factual record gave the Authority no basis for the exercise of its judgment and left no room to make the choice it made.” Respondents allege that petitioner’s failure to demonstrate that the SLA’s decision finds no support in the record requires a dismissal of the petition. In sum, respondents argue that the respondent acted properly in its discretion and that there is no basis for judicial reversal of the *696 decision to deny petitioner his license to operate the proposed retail package liquor store.
IV. DECISION
The SLA is granted broad discretion by statute in case law to grant or deny applications for retail liquor licenses providing it "decide[s] each application submitted to it on its own merits and find[s], before granting an application * * * that public convenience and advantage will be promoted”. (Matter of Hub Wine & Liq. Co. v State Liq. Auth., 16 NY2d 112, 119.) In Matter of Farina v State Liq. Auth. (20 NY2d 484, 491) Associate Judge Scileppi said: "when reviewing the exercise of the Authority’s discretion in refusing to issue or renew a license, the inquiry of the court is strictly limited to whether the Authority acted arbitrarily or capriciously (Matter of Wager v State Liq. Auth., 4 NY2d 465).”
The Court of Appeals has reversed SLA determinations in license matters when they perceive that the SLA has not considered the application on its individual merits but rather by a rule or bulletin has attempted to "avoid its duty by formulating and promulgating a predetermined policy to cover every such application.” (Matter of Hub Wine & Liq. Co. v State Liq. Auth., supra, at p 119.) However, where the SLA has apparently acted on the individual merits of the application the Appellate Division, Third Department, has indicated a court should not look beyond the question of whether "there is sufficient support for [the] findings.” (Matter of Collins v New York State Liq. Auth., 49 AD2d 1000.)
In the present case, the SLA’s written reasons for disapproving the application rely almost entirely on the finding that the proposed store would place undue economic competition on the existing liquor stores in the surrounding area and, that the public demand for retail liquor sales is adequately met by the existing stores. This court is seriously troubled by the SLA’s reason for denying petitioner’s application because the anticompetitive rationale adopted by the SLA appears directly contrary to the legislative intent expressed in chapter 531 of the Laws of 1964 and the Moreland Commission’s studies leading to enactment of that statute as discussed by Associate Judge Bergan in Matter of Hub Wine & Liq. Co. v State Liq. Auth. (supra, at pp 115-119). In that decision, the Court of Appeals observed that the distance requirements between retail liquor stores contained in former subdivision 4 of section 105 of the Alcoholic Beverage Control Law were *697 viewed by the Moreland Commission (which was convened to conduct a careful study of the Alcoholic Beverage Control Law) as "one aspect of a highly protected and monopolistic practice in the sale of liquor in New York which was responsible for the adverse public effect on the administration of the liquor law.” (Matter of Hub Wine & Liq. Co. v State Liq. Auth., supra, at p 116.) Judge Bergan also quoted the commission’s findings in his opinion Matter of Hub Wine & Liq. Co. v State Liq. Auth. (16 NY2d, at p 116) where he observed "[a] basic remedy for these evils [monopoly in the sale of liquor in New York], the commission found, 'would be restoration of the free market’. (Interim Report, Aug. 30, 1963, p. 9.)” Judge Bergan in the same opinion also said (p 117) that the elimination of the statutory distance requirement between liquor stores was done "essentially * * * toward a free market for the sale of liquor in the interest of the consumer. The elimination of compulsory retail price maintenance by section 11 of the 1964 statute was a step in the same direction.” This court believes that Judge Bergan accurately described the thrust of the legislation changing the Alcoholic Beverage Control Law in 1964 to be the encouragement of free competition among retail liquor stores. This being so, it is clear that the SLA’s denying the liquor license solely on the ground that its grant may tend to increase competition in a given geographic area appears to conflict with the legislative purpose to increase rather than decrease competition in the retail liquor trade in New York State.
Additionally, the State Liquor Authority is charged with reviewing each proposed application for a retail liquor license using as a standard "the public interest and convenience.” This court finds that determination of the public interest and convenience in the instant case requires SLA comment on more than just the economics of placing another retail liquor store in the Catskill area. The SLA should also consider such questions as (1) whether public convenience would be served by granting petitioner a restricted license to sell those types of beverages not sold in the other established Catskill stores, (2) whether the public interest and convenience is better served by an owner/operator such as petitioner or by absentee/owner operators as are alleged to exist in the other Catskill liquor stores, and (3) whether petitioner’s location in a regional shopping center makes ingress and egress for motorists and pedestrians safer than crossing a major highway to shop for *698 alcoholic beverages (see, e.g., Matter of Swalbach v State Liq. Auth., 7 NY2d 518, 529)?
The court finds that the SLA’s concentration on the competitive effect of petitioner’s proposed store on existing retail liquor stores in the Catskill area to be improper because consideration for public interest and convenience encompasses more than just the question of whether the public demand is adequately being served by the existing stores. It is possible that petitioner’s proposed store may serve a demand not served by the existing stores because of a difference in the type of alcoholic beverages that petitioner may offer to the public. At the very least, this court believes that the SLA should reconsider petitioner’s application and its definition of the public interest and convenience in view of the observations made in this decision. Accordingly, the SLA’s decision to disapprove petitioner’s application for a retail package store license is vacated, and the matter is remanded to the SLA for further consideration of the public interest and convenience as defined in this decision.