Scileppi, J.
On December 1, 1964 Anthony J. Farina, the petitioner, filed with the Westchester County Alcoholic Beverage Control Board an application for a retail package store license. The application requires a detailed financial statement disclosing all available funds for the establishment of the business. Complying with this requirement, petitioner certified that, in addition to other listed resources, he intended to use the loan value of his New York State Employees Retirement System fund and moneys which he could obtain by increasing the mortgage on his home.
In due course, the petitioner’s application was approved, and he received a package store license for the said premises on June 25, 1965 for the license year expiring February 28, 1966.
Several months later, the petitioner sought to sell his liquor ■store. After visiting the premises, Leonard and Matthew Scaperotta agreed to purchase the business. Accordingly, they filed application for a license, by way of transfer of ownership from the petitioner, with the Westchester County Alcoholic Beverage Control Board on November 17, 1965.
The Scaperottas’ application was approved on December 10, 1965 by the local board and forwarded to the State Liquor Authority for final action. The Authority, however, did not act on this license; instead, it ordered an investigation to determine (1) why petitioner wanted to sell the premises so soon after he obtained a license and (2) whether there was any connection between him and the proposed purchasers prior to the time the petitioner received his license.
*489 On January 19, 1966, petitioner appeared without an attorney before Investigators Zivin and Schachnovsky. He informed them that he was selling the business because he simply could not find the time or energy to run it; that he was then, and had been for the past 31 years, employed by the State of New York as a senior marketing representative in the Division of Marketing of the State Department of Agriculture and that the liquor store was to have been an extra source of income, but it was taking its toll on his health. He had been working 15 hours a day; he had lost 35 pounds; and he had had a slight heart attack.
On January 25,1966, the petitioner again appeared without an attorney before the same investigators. He produced all of his financial records. The petitioner informed the investigators that, in financing the business, he had decided not to borrow from the New York State Employees Retirement System because he had only a short time to full retirement at age 55; since he still owed the System $1,700 he thought it would be difficult to pay the System and it might interfere with his proposed retirement. The petitioner had not increased the mortgage on his home either, he informed the investigators, because he considered that that extra interest, from 4%% to 5%%, would make the monthly payments of principal and interest too costly.
On the basis of frank answers by the petitioner to the investigators at this interview, they reported that he had financed his business with the following funds which had not been originally contemplated: $1,500 from a relative, previously disclosed; $1,000 from another relative, not previously disclosed; $1,000 in savings of his wife, not previously disclosed, and $3,000 from cash allegedly at hand and allegedly earned as commissions from selling furniture and from real estate transactions, upon which petitioner had told them he had not yet paid taxes.
Having received this information, on February 16, 1966, the Authority determined to refer the matter for a nonrenewal proceeding, with provision to renew the license on stipulation.
On February 21, 1966, the petitioner executed a stipulation which, after reciting ‘‘ that it would create undue hardship were the Authority to withhold the issuance of the renewal license pending the completion of the necessary investigation and evaluation of the renewal application or the initiation of a revocation proceeding or the determination of such a proceeding ’ ’, *490 renewed the license bnt without prejudice to the Authority’s right to revoke, cancel or suspend said renewal license. It further provided that the Authority’s issuance of a renewal license was not to be deemed a waiver of its right to refuse to renew the license.
On February 28,1966 a notice was sent to petitioner to appear for a noñrenewal interview at the Authority’s office on March 9, 1966 for the following reasons; “ That the conduct of the licensee was of such an improper nature as to warrant the non-renewal of his license in that in connection with his original application for a license, he concealed or suppressed facts relating to the true source of funds to be used in financing the business; and in that he failed to report for income tax purposes, to the Federal government and New York State, income emanating from commissions as made from selling furniture and from selling businesses or real estate ’ ’.
At the conclusion of this interview, which met the requirements of a formal hearing, the specifications were sustained. The Hearing Officer’s findings were submitted to the Authority and the petitioner’s attorney was afforded an opportunity to controvert them. On April 26, 1966, the Authority approved the findings of the Hearing Officer and unanimously voted that an order of recall be entered against the petitioner on the ground that, as the specifications had been sustained, ‘ ‘ the licensee will not or cannot properly operate these premises so as to prevent violations of law from occurring therein, and renewal of said license would create a high degree of risk in the administration and enforcement of the Alcoholic Beverage Control Law,”
Thereafter, the petitioner brought this article 78 proceeding seeking to annul and set aside the Authority’s order on the following grounds: that notwithstanding the stipulation, the Authority could not hold a non-statutory “ non-renewal ” proceeding; that the Authority is limited to the specific statutory proceedings of cancellation, revocation and suspension; and that the determination was arbitrary and capricious. The Supreme Court, Westchester Comity, rejected these contentions.
On appeal, the Appellate Division, Second Department, affirmed with two Justices dissenting.
In this court, petitioner pointed out that by utilizing a non-renewal proceeding, the Authority not only excludes from the *491 range of its disciplinary powers a consideration of suspension of the license but also effectively limits the scope of judicial review of its action. In reviewing a disciplinary proceeding, which under section 118 of the Alcoholic Beverage Control Law may terminate in revocation, cancellation or suspension, the reviewing court can consider whether the determination of the Authority is arbitrary and capricious and, in addition, whether the punishment imposed was excessive (CPLR 7803, subd. 3). However, when reviewing the exercise of the Authority’s discretion in refusing to issue or renew a license, the inquiry of the court is strictly limited to whether the Authority acted arbitrarily or capriciously (Matter of Wager v. State Liq. Auth., 4 N Y 2d 465).
The problem with petitioner’s argument, however, is that it assumes that once the Authority learns of a possible violation of the Alcoholic Beverage Control Law, it must institute a disciplinary proceeding. As a practical matter, such a view is untenable. There will be many occasions when the remaining license period is so short as to make revocation or suspension unnecessary. Moreover, the same grounds for revoking, canceling, or suspending a license obviously may furnish a basis for refusing to renew.
Petitioner also fails to recognize that an application for renewal of a liquor license is to be regarded in exactly the same manner as an application for a new license (Matter of Wager v. State Liq. Auth., supra; Matter of Restaurants & Patisseries Longchamps v. O’Connell, 271 App. Div. 684, affd. 296 N. Y. 888; Matter of O B & M Rest. Corp. v. State Liq. Auth., 23 A D 2d 726; Matter of Little Dutch Grill v. O’Connell, 281 App. Div. 901). Thus the Authority need not renew merely because it once granted a license. Neither is the Authority compelled to renew merely because it did not take disciplinary action during the license period. Clearly, the Authority could have simply refused to renew petitioner’s license pending further investigation or hearings. Under this view, petitioner’s argument that the stipulation is of no effect and that his license could not be recalled is untenable. The Authority granted petitioner the privilege of remaining in business to save him any hardship of closing his premises pending the nonrenewal interview. The Authority gained no advantage from the stipulation, and it was made quite *492 clear that the Authority “ specifically reserved to itself the right to recall the license
Furthermore, although petitioner is correct in asserting that there is no statutory authority for a nonrenewal proceeding, by executing the stipulation, he has estopped himself from urging the objection (see Matter of Maksik v. O’Connell, 276 App. Div. 951, affd. 301 N. Y. 541; Selzer v. Baker, 295 N. Y. 145).
We turn now to the contention that the Authority’s determination was arbitrary and capricious. The two dissenting Justices in the Appellate Division agreed with the petitioner and, upon perusing the entire record herein, so must we. The record is devoid of any factual support for the conclusion that the licensee “ cannot properly operate these premises so as to prevent violations of law ” and that renewal of the license “ would create a high degree of risk in the administration and enforcement of the Alcoholic Beverage Control Law”. Indeed the record reveals that the evidence adduced at the hearing does not even support the sustaining of the original specifications. There was no showing that when petitioner first applied for a license he willfully misled the Authority by designating funds different from those actually used. The proof merely showed that for very plausible reasons he failed to use two items specified in his application, viz., the mortgage on his home and a loan against his retirement fund, and instead he used funds which the State Liquor Authority investigator testified were all legitimate.
' The investigator further testified that no connection was found between the petitioner and the Scaperotta brothers and that, insofar as his report was concerned, these purchasers were “ clean ”. As the dissenting Justices in the Appellate Division pointed out: “ [T]here was no hint that the undisclosed assets, or, for that matter, the proposed purchasers, represented undesirable elements (Matter of Wonderful Bar v. Hostetter, 24 A D 2d 1020).”
In regard to petitioner’s failure to report income from real estate and furniture sales commissions for tax purposes, the evidence showed that at the time of the hearing the petitioner’s 1965 returns were not yet due; that the moneys had been earned in 1965 and would be reported on the return for that year.
The record reveals that the petitioner is a hard-working person who has conducted his business without violation of the *493 Alcoholic Beverage Control Law. He has been frank and honest with the Authority, and the record discloses no unfavorable incident with respect to his character and integrity. Nor does the record connect him with any person or persons of questionable character. But, it does reveal that petitioner financed his business with funds that were honestly and legally acquired. We specifically note that, under the circumstances of this case, the innocence of the moneys used is strong evidence of the fact that there was no deliberate intent to conceal or suppress their source. The petitioner’s sole transgression was that he used certain funds which were not originally contemplated in his application and he failed to report this change (see Alcoholic Beverage Control Law, § 110) because he was ignorant of the requirement.
In sum, the record leaves no room for the exercise of the Authority’s discretion. We can only conclude under the facts of this case that the Authority’s determination was arbitrary and capricious, being based upon conclusory reasons, unsupported by factual considerations (Matter of Kendzie v. O’Connell, 283 App. Div. 256). By such conclusion, we do not upset the general rule that the Authority has the power to enforce, by appropriate action, the requirement that source of all funds used in connection with a liquor business be disclosed.
Accordingly, the order of the Appellate Division should be reversed and the determination of the State Liquor Authority annulled, with costs in all courts, and the State Liquor Authority is directed to renew the petitioner’s license as requested.
Chief Judge Fuld and Judges Van Voorhis, Burke, Bergan, Keating and Breitel concur.
Order reversed, the determination of the State Liquor Authority annulled, with costs in all courts, and matter remitted to the State Liquor Authority for further proceedings in accordance with the opinion herein.