In the Matter of C. SCHMIDT & SONS, INCORPORATED, Respondent, v NEW YORK STATE LIQUOR AUTHORITY, Appellant.

First Department, April 3, 1980

### APPEARANCES OF COUNSEL

*Stanley Stein* of counsel *(Warren B. Pesetsky,* attorney), for appellant.

*Arthur M. Handler* of counsel *(Robert S. Goodman* and *Oscar A. Bloustein* with him on the brief; *Golenbock & Barrell; Salon, Bloustein & Raybin,* attorneys), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

We are called upon to decide whether the determinations of the State Liquor Authority ("Authority") rejecting the application of petitioner C. Schmidt & Sons, Inc. ("Schmidt") to effect certain corporate changes ("corporate change") were arbitrary and capricious and should be annulled. We hold that

the determinations of the Authority had a rational basis and therefore were not arbitrary and capricious. Accordingly, we confirm said determinations.

Schmidt is the holder of a wholesale beer license issued to it by the Authority for premises located in Great Neck, Nassau County, New York.[1]

On May 5, 1976, an application for approval of corporate change was filed with the Authority by Schmidt, whereby William H. Pflaumer was to become the sole stockholder and chairman of the board of directors. The documents in support of Schmidt's application indicated that Schmidt had redeemed all its corporate stock and, on April 15, 1976, issued 9,240 shares of stock to William H. Pflaumer, leaving him Schmidt's sole stockholder.

An investigation was conducted and a memorandum prepared by the counsel to the Authority. The memorandum considered the question whether certain Federal convictions of William H. Pflaumer mandated his disqualification as a principal of Schmidt under the Alcoholic Beverage Control Law. The Wholesale License Unit of the Authority also prepared a memorandum for the consideration of the members of the Authority.

At a regular meeting of the Authority, held on May 24, 1978, the members thereof determined that Schmidt's application for approval of corporate change be disapproved. The Authority stated:

"By this application for a corporate change, the licensed corporation seeks approval for the sale of all outstanding shares of its stock to William H. Pflaumer.

"Pflaumer will be the chairman and director of the licensed corporation. Jacqueline A. Branson will be assistant secretary and Mark K. Kessler, Morris Gerber and Philip M. Shiekman become directors. William T. Elliott, formerly a vice president, becomes president and Frederick H. Von Czoernig, formerly assistant treasurer, becomes vice president and treasurer.

"C. Schmidt and Sons redeemed all its corporate stock and

---

1. The Authority argues that Nassau County was the proper venue because Schmidt has its principal office in Great Neck. However, Schmidt points out that the Authority failed to make a timely demand and motion for change of venue pursuant to CPLR 511. Moreover, the venue of the proceeding complies with pertinent provisions of CPLR 506 (subd [b]). (See *Matter of Lefkowitz v Beame,* 52 AD2d 925; *Matter of Ryback v Lomenzo,* 38 AD2d 915.)

on April 15, 1976 issued 9,240 shares to William H. Pflaumer. The licensee has been operating since that time with an unauthorized corporate set-up in violation of the provisions of the Alcoholic Beverage Control Law.

"In 1970 Pflaumer pleaded guilty to a federal indictment which charged him with transporting beer under a name other than the proper name, or brand name known to the trade as designating the contents of the casks containing said beer, in violation of Section 5683 of Title 26 of the United States Code. The offense involved the printing of counterfeit Piel's labels, affixing the counterfeit labels to casks containing Ballantine beer and transporting such unlawfully labeled casks to numerous taverns. Pflaumer was fined $1,000 and placed on probation. Pflaumer who held an importing distributor's license in Pennsylvania, was also fined $1,000 by the Pennsylvania Liquor Control Board.

"In 1973 Pflaumer was again indicted. He pleaded guilty to two counts of a seven count indictment which alleged that Pflaumer and his co-defendants, William H. Pflaumer and Sons, Inc. and one Frederick A. Nichols, supplied beer to retail dealers in beer, utilizing a double set of invoices for the purpose of allowing the retailers to show receipt of less beer than they actually received and that the defendants camouflaged on the books of the corporation sales under the double invoicing system as sales to fictitious retail dealers or retail dealers who did not actually purchase the beer. Pflaumer pleaded guilty to selling (off-record) beer, and supplying invoices without retail dealers' names, addresses or customer numbers, and to counseling retail beer dealers to destroy invoices relating to illegal beer purchases.

"Pflaumer further pleaded guilty to corruptly endeavoring to influence and obstruct and impede the due administration of justice by urging a prospective witness before the grand jury, one of the retailers named as a co-conspirator, to destroy all evidence of illegal purchases and sales of beer and to further urging the witness to give false testimony before the grand jury.

"Thereafter, Pflaumer resigned from William H. Pflaumer and Sons, turning the stock over to a trust established for his children.

"The licenses held by this licensee and its wholly owned subsidiary in New Jersey were suspended for the balance of their terms due to Pflaumer's convictions. The action by the

Division of Alcoholic Beverage Control is the subject of pending litigation.

"The Authority finds that William H. Pflaumer, the incoming chairman and sole stockholder of the corporate licensee has pleaded guilty to crimes which show a flagrant disregard for the judicial process and for the proper conduct of a business licensed to sell alcoholic beverages. The Authority further finds that the conduct of the incoming principal outside the state of New York is indicative of a lack of proper respect for and the ability to strictly comply with the law. In view of this conduct, the Authority is not satisfied that William H. Pflaumer would properly operate this licensed business in compliance with the provisions of the Alcoholic Beverage Control Law.

"The Authority has considered this application in the light of all the facts and circumstances currently before it and the Authority, in the exercise of its considered discretion and independent judgment, finds that the approval of this application for a corporate change would create a high degree of risk and hazard in the administration and enforcement of the Alcoholic Beverage Control Law; that such approval would not be conducive to proper regulation and control and the Authority determines that public convenience and advantage would not be served by such approval.

"The application for corporate change is disapproved."

By letter dated November 20, 1978, Schmidt requested reconsideration of its application. At a regular meeting of the Authority held on December 6, 1978, its members granted the request for reconsideration and, upon such reconsideration, adhered to their original determination.

This proceeding was commenced on September 22, 1978 and an amended petition was served on February 20, 1979. Issue was joined on March 16, 1979, and the matter came before Special Term.

Special Term noted that Ohio and Pennsylvania had approved similar license applications. Relying on *La Greca Rest. v State Liq. Auth.* (33 AD2d 537), the court vacated the determinations of the Authority because, allegedly, the Authority had not sufficiently considered Pflaumer's rehabilitation. In *La Greca* we stated: "The Authority's disapproval was based solely upon the arrest record of [the proposed purchaser] which showed a disorderly conduct conviction of some 16 years ago and a conviction for violation of the Alcoholic

Beverage Control Law nine years ago, together with a declaration of juvenile delinquency 23 years ago when [he] was 15 years of age * * * In evaluating an applicant's fitness consideration must be given to the circumstances of any criminal conviction as well as to the extent to which rehabilitation has occurred. No consideration was given by the Authority to the fact that in the intervening nine years since his last conviction [he] led an exemplary life and to the circumstances that he had been an employee for the past two years of the corporation of which he now seeks to become the owner and that in that time neither he nor the corporation suffered an adverse record."

The record on appeal in *La Greca* discloses that each of the offenses was an isolated occurrence, committed under mitigating circumstances, and that the violation of the Alcoholic Beverage Control Law consisted of a single incident, the dispensation of an alcoholic drink at a social club which had no liquor license. We concluded that the Authority's finding that approval of the application would create a "high degree of risk and hazard in the administration and enforcement of the Alcoholic Beverage Control Law [was] arbitrary and capricious."

The facts here are in sharp contrast. Pflaumer's convictions in 1970 and 1973, considered by the Authority, were for crimes of no small magnitude. Nor were they isolated occurrences. They were, rather, the result of a course of conduct by Pflaumer over a period of more than four years (January, 1968 to May, 1972) directly bearing upon his management and operation of a business concern engaged in wholesale beer distribution. His conviction for obstructing and impeding the due administration of justice reflected an utter disregard for law. Pflaumer now seeks to effectuate corporate change in Schmidt which would enable him to exercise personal control over its operations. This application can by no means be equated with that in *La Greca*. Neither can it be equated with the application in *Matter of Bergansky v State Liq. Auth.* (68 Misc 2d 251, revd 39 AD2d 849, affd 33 NY2d 813). Bergansky's request of the Authority for permission to be employed as a part-time waiter in licensed premises was modest. Furthermore, although the crimes of which Bergansky was convicted were serious, they did not bear directly upon the operation of a substantial business in the liquor industry as do Pflaumer's convictions.

Evaluation of an applicant's character and fitness is proper and pertinent to the exercise of an agency's licensing function *(Matter of Barton Trucking Corp. v O'Connell,* 7 NY2d 299, 308-309). While the Authority's determinations do not refer specifically to Schmidt's claim of Pflaumer's rehabilitation, it is clear from the record that the Authority considered Schmidt's application "in light of all the facts and circumstances currently before it." The administrative record contains, *inter alia,* numerous affidavits (from competitors, bankers, employees, neighbors, and Pflaumer's probation officer who supervised his probation) attesting to Pflaumer's good character. It also discloses that Pflaumer's three-year term of probation was terminated at the half-way mark, that Schmidt's application for change of stock ownership to Pflaumer was approved by the Pennsylvania Liquor Board and the Ohio Liquor Control Commission, that Pflaumer has been operating Schmidt's business for the past few years and that he has engaged in many charitable, community and public service activities. We have noted that in this very matter, Pflaumer as the moving force impelled Schmidt to ignore the statute (Alcoholic Beverage Control Law, § 99-d, subd 2) which requires Authority approval before corporate change is effected. Such conduct by Pflaumer hardly squares with rehabilitation.

■■ The right to traffic in alcoholic beverages is a privilege *(Matter of Wager v State Liq. Auth.,* 4 NY2d 465, 467). The discretion to grant that privilege is vested in the Authority (Alcoholic Beverage Control Law, §§ 2, 17).

■ Courts will not disturb the exercise of administrative discretion unless it is deemed to be arbitrary and capricious *(Matter of Gambino v State Liq. Auth.,* 4 AD2d 37, 38, affd 4 NY2d 997). An administrative determination is not arbitrary or capricious if it has a rational basis on the record as a whole *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 231).

Even if a court might reach a different conclusion, it should not substitute its judgment for that of an administrative agency *(Matter of Restaurants & Patisseries Longchamps v O'Connell,* 271 App Div 684, affd 296 NY 888), absent a demonstration of capriciousness or irrationality.

On the record as a whole, we find that the Authority's determinations to deny approval of the corporate change have a rational basis.

Accordingly, the judgment of the Supreme Court, New York

County (MARKS, J.), entered July 17, 1979, which, *inter alia,* annulled the Authority's determinations of May 24, 1978 and December 8, 1978 rejecting the application of petitioner-respondent Schmidt for approval of corporate change whereby William H. Pflaumer would become its sole stockholder and chairman of the board of directors, should be reversed, on the law, the judgment vacated and petition dismissed and the determinations of the Authority reinstated and confirmed, with costs and disbursements.

BIRNS, J. P., FEIN, ROSS, LUPIANO and BLOOM, JJ., concur.

Judgment, Supreme Court, New York County, entered on July 17, 1979, reversed, on the law, and vacated, the petition dismissed and the determinations of respondent-appellant dated May 24, 1978 and December 8, 1978, respectively, reinstated and confirmed. Appellant shall recover of respondent $75 costs and disbursements of this appeal.