OPINION OF THE COURT
Meyer, J.
The State Liquor Authority is authorized by subdivision 6 of section 106 of the Alcoholic Beverage Control Law to control noise generated by a licensed on-premises establishment when the premises "become disorderly”, but may not deny a license because it believes the noise, parking and traffic that may be generated by an establishment permitted by governing zoning regulations will adversely affect community residents, noise, parking and traffic being matters for consideration of the zoning authorities. Nor may a license be denied because of the existence of a school and some churches more than 200 feet away, because community residents and political leaders oppose its issuance, or because an applicant which reported one increase in the expected cost to equip and decorate the establishment failed to report a later increase, where investigation shows that the money has come from proper sources and there is no evidence that the applicant willfully misled the authority. It is, moreover, improper for the Appellate Division to consider as a basis for upholding denial of the license a ground not considered by the authority or argued on appeal. The order of the Appellate Division should, therefore, be reversed, with costs, and the judgment of Special Term should be reinstated.
Petitioner, Circus Disco Ltd., planning to open what it expected to be the largest discotheque in New York City, rented the first three floors of a 16-story commercial building, located on the northwest corner of 15th Street and Fifth Avenue. The premises, in the southern portion of the Chelsea district, are zoned commercial, though the neighborhood includes a substantial residential population, due in good measure to loft conversions. Petitioner’s proposed operation is a permitted zoning use, though the record does not establish *30 whether the loft conversions are. In relatively close proximity, though beyond the 200-foot restriction of the Alcoholic Beverage Control Law, are a church and a school. Also nearby are at least 5 apartment buildings and 11 brownstone residences.
The proposed discotheque was conceived on a grand scale, encompassing more than 22,000 square feet of floor space on three levels, each with a separate dance floor and distinctively shaped bar, as well as a game room, a glass enclosed lounge, and banquet facilities. As initially designed the establishment was to be a private club, characterized by luxury and elegance, accommodating more than 1,400 people, and including as part of its decor a 1928 fire engine and a carousel from Coney Island’s Steeplechase Park.
With petitioner’s principals doing much of the work themselves, the amount initially budgeted for renovation and equipment was $125,000, but that was thereafter revised in writing to $167,000. By the time the project was completed, however, actual expenditures exceeded $359,000, with more than $100,000 additional in accounts payable.
In July, 1978, petitioner applied for a special on-premise license (theater and entertainment). The Alcoholic Beverage Control Board unanimously recommended approval on condition that the premises be open to the public rather than be operated as a private club, a condition which petitioner accepted. The board expressly found that there was no church or school within 200 feet nor any licensed premises within 400 feet. The authority, however, denied the application, finding that issuance of a license would pose a threat to the welfare of the community because (1) petitioner’s principals were not experienced and did not plan to hire an experienced manager, (2) there were within one block of the club a school, church, townhouses and apartment houses, (3) the authority had received petitions from community groups and communications from elected officials in opposition, and (4) it was not satisfied that the premises would in fact be open to the public. Reconsideration was requested and a supplemental investigation made and the authority adhered to its determination to deny though for somewhat different reasons. Stated reasons were (1) opposition of community and political leaders, (2) that the area could not handle the parking and traffic that would result, (3) it was not satisfied that soundproofing would prevent disturbance outside the building, particularly during late night and early morning hours, (4) the operation would be *31 disruptive of the life-style of local residents, and (5) that by failing to disclose its additional expenditures as required by 9 NYCRR 53.1 (b) or the sources of funds used for them petitioner had evidenced an inability to comply with the authority’s rules which was not cured by subsequent disclosure.
Petitioner then sought review in an article 78 proceeding. Special Term, finding that the zoning for the area permitted the operation, that the conclusion that it would be operated in violation of law or to the detriment of the community was speculation, and that the failure to disclose was an improper basis for denial, the additional cost having been revealed and the sources having been found satisfactory on investigation, annulled the authority’s determination. The Appellate Division reversed, finding relevant considerations the impact of the proposed establishment on the community, the failure to disclose, and, though not a reason advanced by the authority in its decision on reconsideration and not briefed or argued in the Appellate Division, the lack of supervisory experience of petitioner’s principals.
On appeal by petitioner to us from that reversal the issues for consideration are whether the Appellate Division could properly consider the experience issue, whether denial based on failure to comply with 9 NYCRR 53.1 (b) was proper, whether in deciding whether to issue a license the authority may consider noise, parking and traffic, and to what extent may the authority consider opposition from community residents and community and political leaders?[1]
I
The first question need not long detain us. Following the authority’s initial determination petitioner obtained a professional manager and so advised the authority. Its supplemental investigation apparently satisfied it on the issue, for its reconsideration decision made no mention of the point which was not briefed or argued either at Special Term or at the Appellate Division. Since the Appellate Division must judge the *32 authority’s action solely by the grounds invoked by the authority (Matter of Barry v O’Connell, 303 NY 46, 50), and the authority correctly based its decision on this point on the facts existing at the time of its reconsideration (Matter of Whaley v State Liq. Auth., 21 AD2d 977), it was error for the Appellate Division to resurrect the issue as a permissible basis for denial of the license.[2]
II
Denial of the application because of the untimely disclosure of the increased expenditures was, when all of the circumstances are considered, arbitrary and capricious. The present case is essentially indistinguishable from Matter of Farina v State Liq. Auth. (20 NY2d 484). There we held it arbitrary to refuse to renew a license when there had been "no showing that when petitioner first applied for a license he willfully misled the Authority by designating funds different from those actually used” (20 NY2d, at p 492) and we noted that petitioner’s funds were honestly acquired and that "the innocence of the moneys used is strong evidence of the fact that there was no deliberate intent to conceal or suppress their source. The petitioner’s sole transgression was that he used certain funds which were not originally contemplated in his application and failed to report this change * * * because he was ignorant of the requirement” (20 NY2d, at p 493).
Here, though petitioner was aware of the requirement, having once revised the figure upward, the authority concedes that the additional funds came from proper sources, and has presented no evidence other than the omission itself to sustain its characterization of petitioner’s untimely disclosure as "concealment”. Absent any evidence that petitioner willfully misled the authority or of any prejudice to the public interest, except in the technical violation of the regulation and there being no reason to believe that such laxness will continue, denial of a license, which would as a practical matter destroy the half-million-dollar investment of petitioner’s principals, is, as we concluded in Matter of Shore Haven Lounge v State Liq. Auth. (37 NY2d 187, 190) "so disproportionate * * * as to constitute an abuse of * * * discretion” (accord Matter of *33 O’Brien’s Butcher Shop v State of N. Y. Liq. Auth., 47 AD2d 588; Matter of Alvaro v State Liq. Auth., 43 AD2d 902).
Ill
To what extent and under what circumstances the authority may consider the possible adverse impact of petitioner’s operation upon the community presents a more difficult issue. The authority relies upon the authorizations to it in subdivision 1 of section 17 of the Alcoholic Beverage Control Law to issue or refuse to issue licenses and in section 2 of that law to "determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages.” The words "public convenience and advantage” appear from the Moreland Commission Report which preceded revision of the law to be related more to justice for the consumer and the promotion of temperance in the consumption of alcoholic beverages and of respect for the law (see Matter of Forman v State Liq. Auth., 17 NY2d 224; Matter of Hub Wine & Liq. Co. v State Liq. Auth., 16 NY2d 112; Martin v State Liq. Auth., 43 Misc 2d 682 [Cooke, J.], affd on opn below 15 NY2d 707) than to the factors here considered by the authority — the proximity of a school and churches; the possibility of noise disturbing to area residents; the traffic and parking congestion that may result. Though "public convenience and advantage” is not an unconstitutionally vague standard (Martin v State Liq. Auth., supra), its meaning cannot be divorced from the rest of the Alcoholic Beverage Control Law and its generality does not confer upon the authority the powers which it has here presumed to exercise.
A.
Proximity to churches and schools is, for special licensees, governed by subdivision 7 of section 64-a, which provides in pertinent part: "No special on-premises license shall be granted for any premises which shall be on the same street or avenue and within two hundred feet of a building occupied exclusively as a school, church, synagogue or other place of worship; the measurements to be taken in h straight line from the center of the nearest entrance of such school, church, synagogue or other place of worship to the center of the *34 nearest entrance of the premises to be licensed.”[3] The school and churches here in question are each more than 200 feet from petitioner’s discotheque when measured in accordance with the subdivision’s minutely explicit provisions.[4] Recognizing that the subdivision is not violated, the authority argues, nonetheless, that it establishes only the point at which a license application must be denied but does not proscribe rejection of an application because of the presence of a religious or educational institution outside the 200 feet distance. We disagree.
The explicit and detailed language of the subdivision defining the conditions that must be met before its rule is applicable (same street; within 200 feet; building exclusively occupied as a school or place of worship), to state exactly how the measurement of the 200 feet is to be made, and to delimit other exceptions to its rule lead compellingly to the conclusion that had the Legislature intended the Liquor Authority to consider the presence of schools, churches and synagogues more distant it would have said so. Since it has not, we hold that the authority may not deny a license on such a basis.
The conclusion thus reached accords with the substantial governmental interest in uniform application of the law (Grundman v Town of Brighton, 1 Misc 2d 860, 862) and with the weight of existing case law interpreting the subdivision (Matter of Soul Scene v State Liq. Auth., 29 AD2d 543, after remand 35 AD2d 574; Matter of Bubany v State Liq. Auth., 27 AD2d 752; Matter of Surface Line Operators Fraternal Organization v State Liq. Auth., 25 AD2d 775, app den 17 NY2d 425; Matter of Waverly Rest. Corp. v State Liq. Auth., 24 AD2d 985; Matter of Steiert v Epstein, 15 AD2d 532, but see Matter of Santillo v State Liq. Auth., 54 Misc 2d 557, 559, affd 29 *35 AD2d 739; Matter of P. G. P. Entertainment Corp. v State Liq. Auth., 73 AD2d 554).
We do not regard either Matter of Drew v State Liq. Auth. (2 AD2d 75, affd without reaching the merits 2 NY2d 624) or Matter of Kaplan v O’Connell (281 App Div 46, affd 305 NY 850) as contrary to our conclusion. Drew is not contrary because the radius plan in the record shows that Drew’s liquor store was within 200 feet of Ebenezer Gospel Tabernacle and that another church there involved, St. Martin’s, had an auxiliary entrance within 200 feet of it. Kaplan did hold that the broad language of sections 2 and 17 was sufficient to overcome the inference arising from the fact that the Alcoholic Beverage Control Law omitted as to beer-dispensing licensees the visibility and toilet facility requirements it mandated for liquor- and wine-dispensing licensees, but the holding is distinguishable both because of the exquisitely explicit provisions of subdivision 7 of section 64-a and because at least as to the visibility requirement which Kaplan applied it was clearly related to section 2’s purpose of "fostering and promoting temperance * * * and obedience to law” while the distance provision of subdivision 7 of section 64-a is not.
B.
The noise generated by a licensed establishment may furnish a basis for suspending an issued license when its level is such as to affect adversely and unreasonably the repose of area residents, because subdivision 6 of section 106 of the Alcoholic Beverage Control Law mandates that no licensee "suffer or permit [his] premises to become disorderly” (see Quintard Assoc. v State Liq. Auth., 57 AD2d 462, app dsmd 42 NY2d 973, app den 42 NY2d 805; 9 NYCRR 53.1 [q]). But the authority’s denial of petitioner’s license because of the noise potential cannot be sustained.
There simply is no support in the record for the authority’s conclusion that it was "not persuaded that adequate steps [had] been taken to soundproof the premises.” Petitioner’s president’s affidavit details at length the acoustical design of the premises and the materials used in construction and the noise level tests conducted. Based so far as the record reveals, solely on the concerns expressed by residents and community leaders and without any factual data contravening petitioner’s presentation, the application has been rejected. Denial of a license on the speculation that it will be operated in violation *36 of law is impermissible (Matter of Sled Hill Cafe v Hostetter, 22 NY2d 607, 612-613; Matter of Santini Rest. v State Liq. Auth., 32 AD2d 514).
The likelihood of future violation can furnish a basis for denial only when there are facts in the record which rationally support doing so (Matter of Matty’s Rest. v State Liq. Auth., 21 AD2d 818, affd 15 NY2d 659; Matter of Olympia Rest. Corp. v O’Connell, 199 Misc 397, affd 278 App Div 925, affd 303 NY 780). Here there are none.
That a license may not be denied for such a reason does not mean that area residents are without remedy. As already noted, the authority may step in if what is now feared becomes fact. Moreover, the residents themselves may obtain an injunction against the noise if the premises do in fact become a noise nuisance (Peters v Moses, 171 Misc 441, mod 259 App Div 307; see Public Dances or Dance Halls as Nuisances, Ann., 44 ALR2d 1381; Nuisance — Saloons or Taverns, Ann., 5 ALR3d 989).
C.
The authority’s attempt to rest its decision upon a finding that the area surrounding the discotheque cannot accommodate the parking and traffic problems that will result is subject to challenge on several grounds. To begin with, it is not clear that such a finding is supported by substantial evidence. Where an administrative body renders an unfavorable determination because traffic congestion will result, there must be evidence to support that conclusion (see Matter of Young Men’s Christian Assn. of Greater N. Y. v Burns, 13 AD2d 1009; see, also, Matter of Mollineaux v Michaelis, 29 Misc 2d 933, affd 16 AD2d 697). In the present case the authority’s determination does not appear to be founded upon anything more than its own generalizations concerning its past experiences with other discotheques and their attendant crowds of patrons.
There are, however, more fundamental reasons. Parking and traffic are essentially problems for the police or a traffic control commission (see, e.g., General City Law, § 20, subd 32) or for zoning authorities. Presumably, therefore, traffic and parking congestion were taken into account when the zoning decision was made and are not matters to be separately considered by the State Liquor Authority in relation to licens *37 ing an establishment permitted by the zoning.[5] And the more clearly is this so in view of the absence of any reference in the Alcoholic Beverage Control Law to traffic or parking. We have held in the zoning context that traffic and parking problems may be considered by an administrative body only when "such policy or standard was declared in the statute” (Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 NY2d 508, 525) and in the context of a licensing law that the Commissioner of Licenses of the City of New York could not refuse to license a theater because the " 'noise, traffic congestion and attendant parking problem resulting from the erection of a theatre at the proposed location would be a serious detriment to the general welfare, public health and safety of the community’ ” (Matter of Small v Moss, 279 NY 288, 293). We see no reason why a different rule should apply to the State Liquor Authority, to which as already noted the Legislature has not delegated the authority to consider these problems.
IV
The final question is the weight to be given by the authority in its decision making process to the opposition of community residents and political leaders. The authority suggests that the addition by chapter 256 of the Laws of 1978 of subdivision 7 to section 100 of the Alcoholic Beverage Control Law, which requires every applicant for a retail license to post a notice of the pendency of the application on the premises proposed to be licensed, indicates the Legislature’s intent that the authority consider community views concerning whether a license should be issued. Assuming that such a provision would not constitute an unconstitutional delegation of power (an issue on which we express no view, but compare Seattle Trust Co. v Roberge, 278 US 116; and Matter of Concordia Coll. Inst. v Miller, 301 NY 189, with City of Eastlake v Forest City Enterprises, 426 US 668), we find nothing in the wording of the subdivision or in the authority’s memorandum in support of the amendment (NY Legis Ann, 1978, p 185) to suggest that its purpose was other than fairness and openness in government by making the application known so that *38 objections otherwise cognizable under the statute could be brought to the authority’s attention. A more explicit indication of legislative intent than subdivision 7 would be required were public or community reaction alone, unrelated to the other standards set forth in the law, to be a basis for denial of a license. While it is not always inappropriate for the authority to receive the views of others (see Matter of Barry v O’Connell, 303 NY 46, 51, supra; Matter of Winkler v State Liq. Auth., 3 AD2d 1011, affd 4 NY2d 856; Matter of Waverly Rest. Corp. v State Liq. Auth., 24 AD2d 985, supra; Matter of Steiert v Epstein, 15 AD2d 532, supra), the authority cannot deny an application without a reason other than the recommendation or views thus expressed any more than it could properly grant a license application on the basis of outside recommendation and without reference to the statutory standards. As Mr. Justice Pittoni succinctly put it in a zoning case, Matter of Mollineaux v Michaelis (29 Misc 2d 933, 935, affd 16 AD2d 697, supra), "Perhaps the respondents were swayed by the number of objectors. However, we must keep in mind that ours is a government of law and not of men; and that decisions, especially where property rights are protected by Constitutions and laws, .must be based upon such laws and not upon sympathy or public opinion.” (Accord: Matter of Pleasant Val. Home Constr. v Van Wagner, 41 NY2d 1028, 1029; Udell v Haas, 21 NY2d 463, 469; De Sena v Gulde, 24 AD2d 165, 171.)
Here the authority noted in its decision the letters received by it from the area’s State Senator, Assemblyman and Councilperson and the filing of a petition with more than 800 signatures protesting the application. The filing of such letters and petition were proper but of themselves cannot sustain the authority’s determination, unsupported as to other permitted bases as above shown, to reject the application.
For the foregoing reasons the order of the Appellate Division should be reversed, with costs, and the judgment of Special Term should be reinstated.

. Petitioner presents as a further issue the question whether the authority is estopped to deny a license, having on March 1, 1980 renewed without condition the license previously issued to petitioner when the Appellate Division vacated the automatic stay resulting from the authority’s appeal (CPLR 5519, subd [a], par 1). Since for other reasons we conclude that the Appellate Division order must be reversed, we do not reach the estoppel question, but see Matter of Farina v State Liq. Auth. (20 NY2d 484, 491-492).

. For like reason the authority’s initial concern that the premises might not be open to the public is not before us.

. The parallel provision for retail on-premises consumption licenses, contained in subdivision 7 of section 64, is in essentially identical language.

. "Within the context of this subdivision, the word ’entrance’ shall mean a door of a school, of a house of worship, or of the premises sought to be licensed, regularly used to give ingress to students of the school, to the general public attending the place of worship, and to patrons or guests of the premises proposed to be licensed, except that where a school or house of worship is set back from a public thoroughfare, the walkway or stairs leading to any such door shall be deemed an entrance; and the measurement shall be taken to the center of the walkway or stairs at the point where it meets the building line or public throughfare [sic]. A door which has no exterior hardware, or which is used solely as an emergency or fire exit, or for maintenance purposes, or which leads directly to a part of a building not regularly used by the general public or patrons, is not deemed an ’entrance’.”

. Nor may the zoning authorities consider the service of liquor as a reason to exclude an establishment otherwise permitted by the zoning ordinance (Tad’s Franchises v Incorporated Vil. of Pelham Manor, 42 AD2d 616, affd 35 NY2d 672; Zoning Regulations in Respect of Intoxicating Liquors, Ann., 9 ALR2d 877).