■ In the Matter of GALAXY BAR & GRILL CORP., Respondent, v NEW YORK STATE LIQUOR AUTHORITY, Appellant. [61 NYS3d 539]—

Judgment, Supreme Court, New York County (Kathryn E. Freed, J.),entered August 3, 2016, granting the amended petition brought pursuant to CPLR article 78 and annulling respondent New York State Liquor Authority's (SLA) determination, dated February 16, 2016, which denied petitioner Galaxy Bar & Grill Corp.'s (Galaxy) application for a full on-premises liquor license, and remitting the matter to SLA for reconsideration of Galaxy's application, affirmed, without costs.

The issue before us concerns SLA's denial of petitioner's third application for an "on-premises" liquor license to operate a tavern and cabaret. The proposed establishment is on the second floor of a commercial building located at 1370 Ralph Avenue in Brooklyn. The floor plan provides for 24 tables, a 20-foot bar with seating for 10 and a maximum capacity of 375 persons.

Petitioner had submitted two prior applications for a liquor license for this proposed tavern. The first was denied for failure to provide the SLA with requested information and the second was denied because petitioner's principal, Carmel Jean Loiseau, lacked experience in the management of this type of establishment. The application in question sought to remedy

these defects by proposing to hire an experienced manager and submitting a security plan for the operation of the tavern.

The proposed manager, Eduardo Fontan Besey, noted his professional experience from 1999 through 2013 as a manager, consultant and principal with various hotels, restaurants and lounges in Montauk, Miami and Manhattan. The security plan was submitted by Tony Caldarola, a former commanding officer of the Brooklyn North Vice Squad and partner in Illuminus Investigative Services, Inc. The plan provided that the security team would be supervised by retired NYPD personnel, with guards at the front entrance controlling the flow of patrons and scanning their ID's via an electronic security system. Patrons would pass through a metal detector and, if approved, proceed to the second floor tavern. Security guards would be posted by the exit doors of the premises, a security camera would be installed, and a parking plan would be prepared.

After a full board hearing, the SLA denied petitioner's application. The SLA noted that Loiseau had no experience in managing or supervising a business with a liquor license, and, although Besey had considerable management experience, at least one of the businesses he managed had a history of sales to minors.

Significantly, in its decision, the SLA noted that the subject location had twice been previously licensed in the past by two entities unrelated to either each other or to Loiseau. In both cases, those entities had their licenses revoked for, among other things, assaults, shootings, stabbings, disorderly conduct, sales of alcohol to minors, lewd conduct and various other activities that became a "focal point of police attention." The SLA also noted that two prior applications by Loiseau had been denied.

Subsequently, a "Disapproval Hearing," which focused on Caldarola's security plan, was held before an Administrative Law Judge (ALJ). Mr. Caldarola testified that he spoke with community affairs personnel in the local precinct to determine the prior history of the location. The business plan envisioned serving a more mature clientele in an "event"-type setting. He testified that with these facts, along with the implementation of his security plan, the premises could be operated safely and would avoid the past unsavory activity that took place at that location.

Besey acknowledged that he was the manager of a premises in which there were some incidents of underage serving, which he brought to the attention of the owners. When they refused to change their practices, he quit their employ.

Finally, the local Community Board was notified of the hear-

ing and no one appeared to oppose the application. In this regard, petitioner had included with its application a letter from a City Council member urging favorable action on the application.

The ALJ recommended that the application disapproval be vacated and that the application process be reopened. Although the past history of the premises was troublesome, the ALJ found that Loiseau had no connection with those events, that the plans for security and proper management demonstrated a willingness to comply with the law and that there was no rational basis to conclude that the premises would not be properly controlled and operated.

At a second meeting of the full board, the SLA counsel criticized the ALJ's determination and gave petitioner the option of either a second disapproval hearing or a request for the SLA to reconsider its prior determination. Petitioner opted for a second disapproval hearing, which was held before a different ALJ. That ALJ upheld the full board's disapproval of petitioner's application, finding, among other things, that the SLA had a rational basis for making its disapproval determination, given the past history of the premises and its concern that history would "repeat itself," thus putting local residents and patrons of the establishment at risk.

Petitioner commenced an article 78 proceeding. The motion court granted the amended petition, annulled the determination denying petitioner's application for a full on-premises liquor license and remitted the matter to the SLA for reconsideration of the application in accordance with the court's decision. The court found that the history of violations and reported criminal activity was not relevant here because petitioner had no ownership interest in the prior licensees and exercised no managerial responsibilities with the prior operators. The court also found community support based upon the letter from a City Council member urging the SLA to grant the license. We agree.

The SLA is given wide latitude in the exercise of its powers (*Matter of Wanetick v State Liq. Auth.*, 8 AD2d 706, 706 [1st Dept 1959], *lv denied* 6 NY2d 707 [1959]). In reviewing a determination made by the SLA, the test to be applied by the court is whether its determination has a rational basis in the record (*see Matter of C. Schmidt & Sons v New York State Liq. Auth.*, 73 AD2d 399, 404 [1st Dept 1980], *affd* 52 NY2d 751 [1980]).

The dissent correctly notes that the prior adverse license history of the subject premises, and the sensitive area in which it

is located, may be proper factors to be considered in the licensing process. However, in doing so, the dissent ignores long-standing precedent from several Judicial Departments, including our own, that such history is not relevant where, as here, the principal of the applicant "ha[s] no ownership interest in the previous licensee and there is no reasonable factual basis to support a finding that he exercised managerial responsibilities with respect to that prior operation" (*see Matter of Ha Ha Ha, Inc. v New York State Liq. Auth.*, 262 AD2d 1008, 1008 [4th Dept 1999]; *see also Matter of 135 Rest. Corp. v State Liq. Auth.*, 25 AD2d 651, 651 [1st Dept 1966]; *Matter of 512-3rd St. v New York State Liq. Auth.*, 217 AD2d 1010, 1010 [4th Dept 1995]; *Matter of Tobo Rest., Inc. v State Liq. Auth.*, 49 AD2d 766, 767 [2d Dept 1975]).

The SLA maintains that the applicant has the identical business plan for a nightclub as the previous two licensees whose licenses were revoked. Thus, the SLA contends that the fear of "history . . . repeat[ing] itself," especially in light of the proposed manager's "questionable" experience, has a rational basis and its denial should be upheld. However, its denial appears to be "based upon conclusory reasons unsupported by factual considerations of reasonable persuasiveness and should therefore . . . be set aside" (*Matter of Matty's Rest. v New York State Liq. Auth.*, 21 AD2d 818, 819 [2d Dept 1964], *affd* 15 NY2d 659 [1964]). Moreover, the SLA may not deny a proper license application based on the supposition that principals of the licensee would not exercise the "proper 'degree of personal supervision' " over the licensed premises to insure the premises would be operated in an orderly and lawful manner, as such denial would be based on speculative inferences (*Matter of Santini Rests. v State Liq. Auth.*, 32 AD2d 514, 514 [1st Dept 1969]; *see also Matter of Bonafino v Doyle*, 39 AD2d 1009 [3d Dept 1972]).

Here, Besey explained that his "questionable experience" was limited to one employer, and that his other significant experience was unblemished. The application also included an extensive security plan, submitted by a retired NYPD lieutenant who was a former commanding officer of Brooklyn North Vice Squad and a principal in a security services company. While the SLA relies on *Pastore & Assoc. v New York State Liq. Auth.* (194 AD2d 409, 410 [1st Dept 1993]) for the principle that the efficacy of a security plan is subject to the SLA's evaluation, and while the security plan, standing alone, would not mandate the granting of this application, there is no evidence that the SLA found the security plan to be inadequate, or that it would not be properly implemented.

While the SLA referenced local residents' complaints regarding the situation created by prior licensees' activities, community opposition in and of itself cannot sustain the authority's determination to reject the application (*Matter of Circus Disco v New York State Liq. Auth.*, 51 NY2d 24, 38 [1980]). In any event, there is nothing in this record to support a finding of community opposition. While the dissent interprets the failure of petitioner to meet with the Community Board as evidence of community opposition, the record shows that the Community Board was given notification of the SLA hearing and no one appeared to either oppose or support it. This essential fact is overlooked in the SLA's determination. Additionally, as conceded by the dissent, petitioner submitted a letter of support from a City Council member. Nor is there anything in the record that the police have expressed concern about the present application. The dissent correctly notes that petitioner conceded at the SLA hearing that the police certainly had serious issues with the conduct of past licensees. However, as noted above, the security consultant, a former NYPD vice squad commander, personally met with the local precinct community affairs officers to determine the prior history of the location and to discuss the proposed new establishment. As with the Community Board, the police had the opportunity to express reservations or concerns and failed to either appear at, or send communications to, the SLA regarding any concerns they may have had about petitioner's application.

Moreover, "[t]he likelihood of future violation can furnish a basis for denial only when there are facts in the record which rationally support doing so" (*Matter of Circus Disco*, 51 NY2d at 36, citing *Matter of Matty's Rest.*, 21 AD2d at 818).

Here, there are no such facts in the record. The concern that history would "repeat itself" is not sufficient to warrant denial since the record does not rationally support this conclusion. The SLA and residents are not without remedies "if what is . . . feared becomes fact" (*Matter of Circus Disco*, 51 NY2d at 36).

In affirming the motion court's ruling, we are not, as the dissent contends, substituting our judgment for that of the SLA. Rather, we are maintaining our "judicial responsibility to review and pass upon administrative action claimed to be arbitrary and without foundation in fact or in law" (*Matter of Matty's Rest.*, 21 AD2d at 818; *Matter of Bonafino*, 39 AD2d at 1009).

As a result, upon the entire record presented here, the inescapable conclusion is that, as a matter of law, the reasons

stated by the SLA in support of its disapproval of petitioner's application, "whether considered singly or in relation to each other, d[id] not afford a rational basis for the action taken," and should therefore be set aside (*Matter of Matty's Rest.*, 21 AD2d at 818).

It bears noting that, in affirming the motion court's decision and judgment, we are not directing the SLA to issue a license. Rather, our decision confirms the motion court's direction that the SLA reconsider the application in light of the precedential principles set forth in both our and the motion court's decisions. Concur—Sweeny, Manzanet-Daniels and Moskowitz, JJ.

Tom, J.P., and Andrias, J., dissent in a memorandum by Tom, J.P., as follows: The Liquor Authority's decision to deny petitioner's application for a full on-premises liquor license has a rational basis in the record and was not arbitrary and capricious. Accordingly, I dissent.

Petitioner's 2015 application was for a bar/tavern and cabaret, with live and recorded music, plus dancing. Carmel Jean Loiseau signed the application as petitioner's principal. Loiseau's prior experience was listed as building maintenance and maintenance manager. Loiseau also indicated that petitioner's application had been disapproved twice before. The first time was on March 12, 2013, for failure to provide the Liquor Authority with certain information, and the second time was on April 11, 2014, for lack of management experience.

Eduardo Fontan Besey was petitioner's proposed manager in the present application. Besey noted his professional experience, from 1999 through 2013, as a manager, consultant, and principal with various hotels, restaurants, and lounges in Montauk, Miami, and Manhattan. Also attached to the application was a detailed security plan for the location.

Following a full board hearing in August 2015, on September 11, 2015, the Authority denied the application. Among its many concerns, the Authority noted that this was the third time petitioner had applied for a license at this location, that the first application was denied for failure to cooperate with the Community Board, and that the second application was denied because petitioner failed to address the Authority's concerns or provide a clear plan of supervision. The Authority remained concerned that on this third application petitioner had still failed to meet with the Community Board to resolve the objections the neighborhood had to licensing the location.

The Authority also noted that the sole principal of petitioner has never held a license to sell alcoholic beverages and did not disclose any experience working in, or supervising, a business

with a liquor license. While acknowledging that Besey, who has appropriate experience, would be managing the business, the Authority noted that his experience was "questionable" because at least one of the businesses for which he worked had a history of sales to minors during the time Besey was employed as its manager.

Although petitioner did submit a security plan with this application, the Authority noted that local police had expressed reservations about having a nightclub at this location given the history of shootings, stabbings, sales to minors and other incidents. Given both this history, the lack of experience of petitioner's principal and the questionable experience of the proposed manager and the other concerns it had about petitioner, the Authority was unconvinced that the location could be operated by petitioner as a nightclub without a reoccurrence of violence and unlawful operation. The Authority was not persuaded that petitioner's proposed changes would be possible, given the evidence presented, including the limited seating, music and dancing at the premises. Thus, concerned that history would "repeat itself" the Authority determined it could not risk the safety of the local residents or patrons of the establishment.

In articulating its reasons for denying the application, the Authority also provided a history of the location. It noted that the past two licensees had their licenses revoked following violations of building codes; allowed the premises to become disorderly, and that such disorder included assaults such as stabbings and shootings, and lewd conduct; sold alcohol to minors and after hours; and permitted other parties to use their license. The Authority also remarked that the continuing pattern of problems at the location resulted in it becoming a focal point of police attention.

Ultimately, an Administrative Law Judge determined that the Authority had a rational basis for its determination, and on February 16, 2016 the Authority adopted the recommendation and denied the application.

The Liquor Authority is given wide latitude in the exercise of its powers (see Matter of Wanetick v State Liq. Auth., 8 AD2d 706, 706 [1st Dept 1959], lv denied 6 NY2d 707 [1959]). "[A] reviewing court is not entitled to interfere in the exercise of discretion by an administrative agency unless there is no rational basis for the exercise, or the action complained of is arbitrary and capricious" (Matter of Soho Alliance v New York State Liq. Auth., 32 AD3d 363, 363 [1st Dept 2006]). Courts look to whether the determination "is without sound basis in

reason and is generally taken without regard to the facts" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]).

Here, the Authority's written statement sets forth detailed, concrete reasons for its determination, made after a hearing, that good cause had been shown to deny the application, i.e., that "public convenience and advantage and the public interest" would not be promoted by issuance of the license (Alcoholic Beverage Control Law § 64 [1], [6-a]). In sum, the Authority's determination has a rational basis in the record and was not arbitrary and capricious.

The Authority rationally considered a number of relevant factors in making its determination, including the principal's lack of experience, the questionable experience of the proposed manager, petitioner's failure to meet with the Community Board, opposition from the police and community, the history of violence and unlawful behavior at that location, the risk to the public's safety, and that petitioner had the identical business plan for a nightclub as the previous two licensees whose licenses were revoked (*see* Alcoholic Beverage Control Law § 64 [6-a] [f]). Further, while petitioner did submit a security plan, "[t]he efficacy of such operational plans is, of course, subject to respondent's evaluation" (*Pastore & Assoc. v New York State Liq. Auth.*, 194 AD2d 409, 410 [1st Dept 1993]). Nor does the submission of a purportedly adequate security plan require the granting of the license if there are other factors weighing against doing so.

The Authority also properly considered "[t]he history of liquor violations and reported criminal activity at the proposed premises" (Alcoholic Beverage Control Law § 64 [6-a] [e]) even though petitioner had no ownership interest in the previous licensees (*cf. Matter of Ha Ha Ha, Inc. v New York State Liq. Auth.*, 262 AD2d 1008 [4th Dept 1999]). Contrary to the majority's argument, the prior licensees' licensing history and the location, which reflects a potentially dangerous and troublesome locale that can affect the safety and welfare of the patrons and employees of the establishment, were relevant to this application and served as factors, among others, that informed the Authority in making its determination. Indeed, the history and location factors are very relevant to the complete lack of experience of the sole principal applicant and the questionable qualifications of the proposed manager, and, given all the combination of these and other factors, the Authority rationally decided not to grant the application.

Further, petitioner was not unfairly prejudiced by the past licensees' failures, as the Authority's determination was not solely based on that history (*cf. Matter of 512-3rd St. v New York State Liq. Auth.*, 217 AD2d 1010, 1010 [4th Dept 1995] ["The prior history of the premises, standing alone . . . is insufficient to warrant disapproval of the application"]). Rather, in conjunction with a number of factors, including the complete lack of experience of the sole principal owner in managing or supervising a bar/tavern/cabaret with a liquor license and the questionable qualification of the proposed manager, the Authority properly considered this history as it related to the "community impact" of licensing a nightclub at that location (*see Matter of 21 Group, Inc. v New York State Liq. Auth.*, 115 AD3d 509, 509 [1st Dept 2014], *lv denied* 24 NY3d 908 [2014]).

A fair reading of the Authority's determination demonstrates that community opposition to the proposed establishment was not the sole basis for the determination, and thus the majority's concern in that regard is unfounded. Further, contrary to the majority's claim that there is no evidence of community or police opposition, petitioner conceded below that the police have expressed concerns about this application, and petitioner failed to meet with the Community Board to attempt to resolve the objections the community had to licensing the location, including the objections received to petitioner's earlier applications. In fact, in its determination the Authority found the following: "We remain concerned with the fact that it appears that the applicant has failed to meet with the Community Board to attempt to resolve the objections that the neighborhood has to licensing this location. In addition, the applicant concedes that the local police have expressed reservations about another nightclub being opened at this location, given the incidents that have taken place here in the past."

At the Liquor Authority's August 2015 hearing, Authority Chairman Bradley stated that the Community Board had problems with petitioner's application because it was a problem location and petitioner was proposing a similar nightclub at a location that had a history of violence and safety issues. Petitioner's counsel responded that petitioner was aware that the Community Board had concerns. In addition, Chairman Bradley noted that the location was a violent place and a "[p]olice focal point." Petitioner's counsel acknowledged that when he contacted the police regarding the application the police expressed concerns about, among other things, unruliness, the lack of control, and excessive capacity levels. Chairman Bradley also remarked that the history of violence at the location, which

had a similar business model to this application, should not be minimized as it was extensive and included shootings and stabbings.

Although it is not the role of this Court, the majority appears to be challenging the fact finding of the Liquor Authority with regard to community and police opposition. Further, by stressing the fact that the police and Community Board did not appear at the SLA hearing, the majority creates a burden where none exists. "It is for the administrative agency to determine the credibility of the witnesses, to weigh the evidence and to draw inferences therefrom, and this Court cannot substitute its judgment, on conflicting evidence or on conflicting inferences for that of the Agency" (*Irvington Enters. v Duffy*, 155 AD2d 335, 336 [1st Dept 1989]; *see also Matter of Pell*, 34 NY2d at 232; *Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009] [if there is rational basis for a determination, reviewing court "must sustain the determination even if the court concludes that it would have reached a different result than the one reached by the agency"]). Moreover, it was undisputed that the police expressed concerns about the application and they were thus not required to appear at the hearing. Nor is there a basis to question the Authority's concerns about petitioner's failure to meet with the Community Board, or the Community Board's concerns about the application.

The fact that the Community Board did not attend the Liquor Authority's hearing is not germaine to the Liquor Authority's finding that the Community Board had a problem with petitioner's application. At the hearing, petitioner had acknowledged the Community Board's concern regarding the application due to safety issues at the location. The majority's purported concern that the Community Board had not attended the hearing is a nonissue and a red herring.

The Authority's determination was neither based on speculation nor on conclusory reasons, as suggested by the majority. Rather, it was based on an undisputed violent history at the premises, the established questionable experience of the proposed manager, community and police opposition, and the owner's lack of experience. While the Authority cannot see into the future with perfect accuracy, there were facts in this record to support the Authority's concerns about future violations (*see Matter of Circus Disco v New York State Liq. Auth.*, 51 NY2d 24, 36 [1980]), and the Authority and community residents should not have to wait until such violations occur.

While there may be some evidence that might support petitioner's application for a liquor license, including a sup-

porting letter from a City Council Member, it is not our place to substitute our judgment for that of the Authority, which made a reasonable decision and did not abuse its discretion (*see Pell*, 34 NY2d at 232).

I would therefore reverse the decision of the motion court granting the amended petition brought pursuant to CPLR article 78 and annulling the Liquor Authority's determination, dated February 16, 2016, vacate the judgment, and dismiss this proceeding.