Bergan, J.
This appeal by the State Liquor Authority from an order annulling its decision to grant a retail liquor store licensee permission to remove from one location to another brings up an aspect of the revision of the State’s liquor law by chapter 531 of the Laws of 1964 and of the Moreland Commission’s studies leading to the enactment of that statute not *116 considered in Seagram & Sons v. Hostetter (16 N Y 2d 47), decided herewith.
The former statutory provision (Alcoholic Beverage Control Law, § 105, subd. 4) had prohibited the granting of a retail license in cities of over a million population “within fifteen hundred feet of any premises holding a similar license on the same street or avenue ” and within 700 feet in areas outside such cities.
The first report of the Moreland Commission (Jan. 3, 1964) recommended the elimination of the distance restrictions as “ a prerequisite to all of the other recommended changes because, until they are eliminated, intelligent judgment cannot be exercised by new applicants or present licensees in deciding where their businesses should ultimately be located” (Report No. 1, p. 44).
This distance restriction was regarded by the commission as one aspect of a highly protected and monopolistic practice in the sale of liquor in New York which was responsible for the adverse public effect on the administration of the liquor law.
A basic remedy for these evils, the commission found, “ would be the restoration of the free market ”. (Interim Report, Aug. 30,1963, p. 9.) The commission stated further: “ From all the information which can be gathered on the historical background of the distance restriction, it appears that it was designed to prevent liquor stores from locating in clusters 1 in order to prevent an unlimited grouping of retail stores which might result in harmful competition with its resulting evil effects. ’ * * * It is our finding that these distance requirements have no present purpose except to restrict competition.” (Report No. 1, p. 15.) It stated further: “ None of these factors evidences a design to promote temperance and respect for law. Bulletin 279 was primarily concerned with protecting the economic position of entrenched package stores.” (p. 17.) It continued that “the conclusion is irresistible that the maintenance of major restrictive provisions of our liquor laws has been dictated by the industry, at the expense of public convenience, logic and good administration. The history of these provisions and regulations offers impressive support for this view. It is obviously anomalous that the highest degree of economic protection accorded by law tp any industry in this State (with the possible *117 exception of regulated public utilities) is given to an industry which is generally thought to be low on the scale of public value. ’ ’ (p. 27.) It concluded that these restrictions did not promote temperance.
And the Governor’s message to the Legislature (Feb. 10, 1964) asked “justice to the consumer” by putting an end to “ the artificial devices” through which the liquor industry received “ uniquely beneficial treatment at the consumer’s expense ”, an example being the artificial distance requirements between retail premises concerning which “ careful studies now show that there is no discernible connection between temperate and lawful behavior and the establishment of such arbitrary and compulsory distances between package stores. These distance requirements have no present purpose except to restrict competition.”
In the light of these highly pertinent studies and recommendations, the repeal of the distance requirements by the 1964 statute (L. 1964, ch. 531, §§ 13, 14) must be seen as a reversal by New York of the public policy of artificial restrictions on competition in retail liquor selling and an asserted freeing of the Liquor Authority’s power to eliminate these legally protected monopolies.
The statute was not enacted in a vacuum. It was addressed to elimination of a specific public evil and more than literal “ distance ” between stores was involved in this change of policy. The change essentially was toward a free market for the sale of liquor in the interest of the consumer. The elimination of compulsory retail price maintenance by section 11 of the 1964 statute was a step in the same direction.
The petitioners who have proceeded against the Liquor Authority in this ease and have succeeded in anunlliug its determination have no direct interest in the transfer itself. Their objection to it is that it will result, so they believe, in an increase in competition.
It is upon this basis they contend the Authority’s action is arbitrary and not based on sufficient guidelines; that public convenience is not promoted by the transfer, and that the area of removal, in which petitioners have licenses, “ is more than amply and sufficiently served by these four existing stores ”.
*118 The licensee given permission to transfer its location and its predecessor had been doing business as Hearns Liquor Store at 74-76 Fifth Avenue for over 30 years. It was originally established as an adjunct to Hearns Department Store on West 14th Street. In 1955 this department store closed due to adverse business conditions and the Hearns store in the Bronx became its “ main ” store.
Application would normally have been made then to transfer the license to the Bronx location of Hearns except that the 1,500-foot distance requirement prohibited it. After 1955 the Hearns Liquor Store did largely a mail and phone order business which consistently declined in volume.
In 1960 there was a merger with the parent company and a transfer of ownership to the present applicant City Stores Company, Inc., a subsidiary of Hearns. The 1964 application which has been granted by the Authority would permit the change of location to the same location as the Hearns Department Store at East 149th Street and Third Avenue in the Bronx.
The court at Special Term acted on the assumption the Authority had failed to pass individually on the merits of this application to transfer the license but had merely acted mechanically on the basis of a general policy announcement of August 6,1964 that it would entertain applications of removal of package store licenses and, the court believed, without considering il whether public convenience and advantage will be promoted ” (Alcoholic Beverage Control Law, § 2; and L. 1964, ch. 531, § 14).
Determination by the Authority without consideration of the record before it is not demonstrated by petitioners. The Authority had a full statement of the factual reasons advanced "by the applicant in support of the change. A part of this material was the statement by the applicant * ‘ that the public convenience and advantage will be promoted by the granting of this removal application for several reasons. The customers of Hearns Bronx department store will be able to obtain their wine and liquor needs as well as their regular department store needs without the necessity of crossing such heavily trafficked streets as East 149th Street and Third Avenue. Furthermore, the proposed area is ideally situated for the Hearns Liquor .Store because it is so heavily concentrated in commercial shopping activities. Applicant understands that the general population *119 of the area surrounding the immediate Hearns shopping district has experienced a large increase over the last several years without any increase in off-premises liquor stores thereby indicating the need for applicant’s proposed liquor store.”
A great deal of other material was before the Authority including the detailed objections of petitioners. Upon this material the Authority announced that this specific application “ has been approved ”.
The Authority is under no obligation to make ‘‘ findings of fact” when it grants an application (Matter of Bosco v. New York State Liq. Auth., 10 A D 2d 629, affg. 20 Misc 2d 115; Matter of Barry v. O’Connell, 303 N. Y. 46). Findings are required on the disapproval of an application, but are not required by section 111 of the Alcoholic Beverage Control Law, pursuant to which this application was approved. Hence decisions such as Matter of Williamson v. New York State Liq. Auth. (14 N Y 2d 360) where the petitioners’ application was denied have no application here.
In reaching the conclusion we do, we recognize and reassert the principle underlying our decision in Matter of Swalbach v. State Liq. Auth. (7 N Y 2d 518). As the court there held, the Authority must decide each application submitted to it on its own merits and find, before granting an application for the removal of licensed premises, that public convenience and advantage will be promoted by the removal; it may not, by rule or bulletin, avoid its duty by formulating and promulgating a predetermined policy to c®ver every such application. The present is not such a case. The application in this case was granted, not automatically on the strength of a general policy announcement, but on the basis of factors submitted by the applicant in support of its petition.
"What is the promotion of “ public convenience and advantage ” must be deemed affected in concept and in operational effect by the 1964 statutory amendments, seen in the light of the statement by the Moreland Commission that the maintenance of major restrictive provisions of the liquor laws has been dictated by the industry ‘ ‘ at the expense of public convenience ’ ’ (Report No. 1, p. 27).
The decision to grant the change in location is consistent with the new law and the petitioners who envisage increased com *120 petition in a field heretofore protected against competition demonstrate no good ground to undo the Authority’s decision. (Cf. Matter of Fiore v. O’Connell, 297 N. Y. 260; Matter of Rockower v. State Liq. Auth., 4 N Y 2d 128.)
The order should be reversed, without costs.