[709 NYS2d 12]

CLEVELAND PLACE NEIGHBORHOOD ASSOCIATION et al.,
Petitioners, v NEW YORK STATE LIQUOR AUTHORITY et al.,
Respondents. JET SIMPLE, INC., Proposed Intervenor-
Respondent.

First Department, May 4, 2000

### APPEARANCES OF COUNSEL

*Jack L. Lester* for petitioners.

*Scott A. Weiner* of counsel (*Thomas G. McKeon,* New York State Liquor Authority, attorney), for respondents.

*Charles J. Carreras* (*Thomas McCallen* and *Brian J. Isaac* on the brief), attorney for proposed intervenor-respondent.

### OPINION OF THE COURT

ELLERIN, J.

The question before us is twofold: whether the transfer of a license to sell liquor at retail for consumption on the premises where sold is subject to the hearing requirements of Alcoholic Beverage Control Law § 64 (7) (f), and, if so, whether respondent New York State Liquor Authority (SLA) satisfied these requirements in the instant matter.

In October of 1997, proposed intervenor-respondent Jet Simple, Inc. (Jet) filed an application with the SLA for the transfer of an on-premises license to it from Cleveland Place, Inc. for use at 19 Cleveland Place in Manhattan. The SLA states that it conducted an investigation and referred the matter to the Members of the Authority for a final determination. The record before us does not contain the results of the investigation.

At its regular meeting on December 10, 1997, the SLA heard from a number of community members and representatives and local elected officials objecting to the transfer of the license. At the conclusion of the meeting, the Members approved the transfer application "subject to stipulation and on the continuing condition that there will be no cabaret license, that none will be applied for, and premises will have no live music, will operate as a bona fide restaurant, and will make every attempt to deal with any complaints of noise from the community."

Petitioners, a neighborhood association and an individual resident of the neighborhood, seek to set aside this determination, pursuant to CPLR article 78, on the grounds that the SLA failed to comply with the hearing requirements of Alcoholic Beverage Control Law § 64 (7) (f) before granting the license and that the granting of the license was not in the public interest.

In support of their contention that the transfer of the license to Jet would adversely affect the community, petitioners submitted evidence that the establishment that had occupied the premises previously was a quiet restaurant with seating for only 10, while Jet had completely renovated the premises and had been operating as a full-fledged nightclub, with no dining facilities, but with loud music, a crowded bar, dancing, and an unauthorized lounge in the cellar for drinking. They submitted evidence that Jet advertised itself in magazines as a nightclub with room for 350 people. There was also evidence that Jet had committed numerous violations during the renovation of the premises; that, since opening, it had consistently been the source of offensive late-night noise, including loud music; that it had been cited by the Department of Environmental Protection for a noise violation arising out of the operation of its three newly installed air conditioning units and ice-maker in the alley behind the building; and that its patrons, in congregating on the street outside, had caused frequent traffic and noise problems. Petitioners also submitted evidence, apparently uncontested, that the premises are within 500 feet of 81 other licensed premises.

In response, Jet contended that, from the time it commenced operations, local tenants had unfairly attacked its presence in the neighborhood; that it had made every attempt to be a good neighbor; and that, although local residents had called the Police and Fire Departments regularly to complain about noise and traffic problems, and these departments had responded, the result was only one citation, which was under appeal. Jet argued that the large number of licensed premises in the area established that this was not a quiet residential area, but a very busy area suitable to Jet's presence. Jet refuted the allegation that it did not operate a restaurant by pointing out that the plans filed with the SLA indicated the existence of a kitchen. It also argued that, pursuant to Alcoholic Beverage Control Law § 64 (7) (f), since a license had already been granted for the premises, Jet could not be denied a "renewal" of that license on the statutory ground that the premises were within 500 feet of three or more other licensed premises.

The evidence discussed *supra* appears in the record on review, but it is not clear what the SLA considered in making its determination, because there is no record of the December 10, 1997 meeting.

Although this proceeding was transferred to this Court on the ground that it presented a question of substantial evi-

dence, while in fact the petition itself did not raise that issue, this Court will retain jurisdiction and determine all the issues raised (*see, Matter of Burrell v Ortiz*, 128 AD2d 391, 392, citing *Matter of 125 Bar Corp. v State Liq. Auth.*, 24 NY2d 174, 180).

Initially, we find that Jet's unopposed motion to intervene should be granted. Jet, the party seeking the transfer of the subject license, is an "interested person" (CPLR 7802 [d]) that will be directly affected by the outcome (*Matter of White v Incorporated Vil. of Plandome Manor*, 190 AD2d 854, *lv denied* 83 NY2d 752).

A license to sell liquor at retail for consumption on the premises where sold is issued to a specified person solely for use upon specified premises (Alcoholic Beverage Control Law § 64 [4]; § 111). In municipalities with populations of more than 20,000, retail licenses for on-premises consumption of alcoholic beverages may not be granted for premises within 500 feet of three or more existing licensed and operating premises (§ 64 [7] [b]), unless, "after consultation with the municipality or the community board, [the SLA] determines that granting such license would be in the public interest" (§ 64 [7] [f]). Before it may grant such a license, the SLA must hold a hearing, "upon notice to the applicant and the municipality or community board," and it must state and file in its office the reasons for its decision (§ 64 [7] [f]).

The Alcoholic Beverage Control Law states that the purpose of regulating and controlling the manufacture, sale and distribution of alcoholic beverages is to foster and promote "temperance in their consumption and respect for and obedience to law" (§ 2), and empowers the SLA "to determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages, the increase or decrease in the number thereof and the location of premises licensed thereby" (*ibid.*).

In determining "whether public convenience and advantage and the public interest will be promoted" by the granting of a license, the SLA may consider any or all of the following factors:

"(a) The number, classes and character of licenses in proximity to the location and in the particular municipality or subdivision thereof.

"(b) Evidence that all necessary licenses and permits have been obtained from the state and all other governing bodies.

"(c) Effect of the grant of the license on vehicular traffic and parking in proximity to the location.

"(d) The existing noise level at the location and any increase in noise level that would be generated by the proposed premises.

"(e) The history of liquor violations and reported criminal activity at the proposed premises.

"(f) Any other factors specified by law or regulation that are relevant to determine the public convenience and advantage and public interest of the community" (§ 64 [6-a]).

These factors were enacted into law by amendment in 1993 as a result of the decision of the Court of Appeals in *Matter of Circus Disco v New York State Liq. Auth.* (51 NY2d 24). The Court held that the SLA could not deny a license on the ground that it believed community residents would be adversely affected by the noise, parking problems and traffic that would be generated by an establishment permitted by governing zoning regulations, because noise, parking and traffic were matters for the consideration of the zoning authorities (1993 NY Legis Ann, at 515). Section 64 (6-a) is intended to guide the SLA in assuring "that appropriate factors are taken into consideration which relate to the business and the impact it has * * * [and] to assure that quality of life impacts are fully incorporated into the responsible state decision-making apparatus" (*ibid.*).

Respondents do not dispute that the instant premises are within 500 feet of three or more other licensed premises and therefore ordinarily subject to the hearing requirements of section 64 (7) (b) and (f). They contend that sections 64 (7) (b) and (f) are inapplicable because the instant matter involves the *transfer* of a license, rather than the issuance of a new license.

The transfer of licenses is governed generally by section 111, which provides, in pertinent part: "A license issued to any person, pursuant to * * * this chapter, for any licensed premises *shall not be transferable to any other person* or to any other premises or to any other part of the building containing the licensed premises *except in the discretion of the authority*" (emphasis added).

In *Matter of Hub Wine & Liq. Co. v State Liq. Auth.* (16 NY2d 112), the Court of Appeals stated that, while the SLA was required to make findings of fact before disapproving an application (*see*, Alcoholic Beverage Control Law § 54 [2], [3]), it was not constrained by section 111 to make findings of fact before granting an application to transfer a license. However, this case was decided well before the enactment of section 64 (7) (f) guaranteed the community's right to a hearing on license

applications. Moreover, it involved a very different legislative concern, namely, a free market for the sale of liquor. The statute had recently been amended to eliminate the distance restrictions on liquor licenses, because they were limiting competition without promoting temperance or respect for the law. Nevertheless, the Court reasserted the principle that the SLA must decide each application on its own merits and find, before granting an application for a transfer, that the transfer would promote " 'public convenience and advantage' " (16 NY2d, at 119).

Section 111 must be read in conjunction with section 64, which is not limited by its language to the issuance of new licenses. Section 64 (7) (f) provides for the issuance of "a retail license." It makes no exception for licenses issued pursuant to either renewals or transfers. Nor can we discern any logical reason why the public should not have the same right to a hearing on the impact of the transfer of a license from one proprietor to another as it has on the impact of the issuance of a license for previously unlicensed premises. The principal purpose of section 111 has been said to be the prevention of "undesirable persons, ineligible to secure a license, from operating a liquor business through another licensee as a 'blind' " (*Matter of Potter v New York State Liq. Auth.*, 37 AD2d 760). Since section 64 was amended, another purpose surely is the prevention of an unsuitable person, whose business would have an adverse effect on community residents, from operating a liquor business through another licensee whose impact on the community was acceptable.

As the allegations set forth in this matter demonstrate, the transfer of a license can mean a change in the nature of the premises and an increase in the level of patronage the business draws. Therefore, to determine how the transfer of a license will affect noise, parking and traffic, the SLA must consider the type of business the transferee will conduct on the premises, not merely the fact that it will serve alcoholic beverages. While conducted in the same physical premises, the proposed transferee's business may have a decidedly different impact on the neighborhood and may compel a different finding as to the public interest.

We reject Jet's argument that it is exempted from the hearing requirement by the language of section 64 (7) (f) governing license renewal, i.e., that, once a license has been issued in compliance with the hearing requirements of "the 500 foot rule," renewal of that license may not be denied on the ground

that the premises are within 500 feet of three or more other licensed premises. Jet sought the transfer to it of a license held by another licensee, not the renewal of a license issued to Jet. The language of section 64 (7) (f) exempting renewals is inapplicable to Jet's application.

For these reasons, we find that the SLA was obligated to conduct a hearing pursuant to Alcoholic Beverage Control Law § 64 (7) (f) before determining whether to grant Jet's transfer application.

While the application apparently was the subject of a meeting open to members of the public, there is no record of the meeting and no way to review the procedures followed or the proof developed before the SLA. Therefore, it is not possible for us to determine whether the meeting satisfied the hearing requirement of section 64 (7) (f). Moreover, the SLA failed to state its reasons for granting the transfer, as required by section 64 (7) (f).

Accordingly, in this proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County [William McCooe, J.], entered July 28, 1998), the determination of respondent New York State Liquor Authority, dated on or about December 17, 1997, which granted the application of proposed intervenor-respondent Jet Simple, Inc. to transfer a liquor license held by the previous tenant to itself, should be annulled, on the law, without costs, the matter remanded to the agency for further proceedings in accordance with this opinion, respondent's motion to dismiss the petition denied, and the motion of Jet Simple, Inc. to be joined as a respondent granted.

WILLIAMS, J. P., LERNER, RUBIN and SAXE, JJ., concur.

In this proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County, entered July 28, 1998), the determination of respondent New York State Liquor Authority, dated on or about December 17, 1997, is annulled, on the law, without costs, the matter remanded to the agency for further proceedings in accordance with the opinion, respondent's motion to dismiss the petition denied, and the motion of Jet Simple, Inc. to be joined as a respondent granted.