[11 NYS3d 66]

Matter of BarFreeBedford et al., Appellants, v New York State Liquor Authority et al., Respondents.

First Department, June 23, 2015

**APPEARANCES OF COUNSEL**

*Mallin & Cha, P.C.*, New York City (*Barry Mallin* of counsel), for appellants.

*Jacqueline P. Flug*, Albany (*Mark D. Frering* and *Courtney E. Denette* of counsel), for New York State Liquor Authority, respondent.

*Law Offices of William M. Poppe, PLLC*, New York City (*William M. Poppe* of counsel), for Chumley's 86 LLC, respondent.

**OPINION OF THE COURT**

ACOSTA, J.

At issue in this appeal is whether Supreme Court properly denied the CPLR article 78 petition to annul the State Liquor Authority's conditional grant of a liquor license to Chumley's 86 LLC. Chumley's is located at 86 Bedford Street in the West Village of Manhattan. Petitioners are BarFreeBedford, a community association of residents who live near 86 Bedford Street, and 47 individual residents of the area. We affirm the denial of the petition since the record demonstrates that the State Liquor Authority's determination has a rational basis and is not arbitrary and capricious.

Respondent Chumley's, a bar and restaurant in the West Village, has a storied history. "The place on Bedford," as it was known then, first opened as one of Manhattan's original speakeasies in the 1920s. Simone de Beauvoir, one of the many literary luminaries who frequented Chumley's, wrote, "[I]t has

that rare thing in America: an atmosphere" (Jef Klein, The History and Stories of the Best Bars of New York 58 [2006]). It was housed in an obscure location befitting the age of the roaring, prohibition-period 20s, and just getting into Chumley's, with its multiple front, side, back, and trap doors, was an adventure.

The roster of regulars reads like the syllabus of a course on great American literature: Hemingway, O'Neill, Fitzgerald, Faulkner, Steinbeck, and Salinger. So prominent were the brilliant wordsmiths of the day at Chumley's that in a 1930s review, restaurant critic Rian James wrote, "[I]t is quite definitely the headquarters of New York's choosier literati" (Rian James, Dining in New York 203 [1930]). As a tribute to past patrons, Chumley's walls were decorated with old book jackets. In 2000, the venerable watering hole was added to the National List of Literary Landmarks by the Friends of Libraries USA.

More recently, Chumley's has become a home to firefighters from FDNY Ladder Company 5 and Engine Company 24, a firehouse that lost 11 men on 9/11. The firehouse is just a few blocks away from Chumley's, and many of the firefighters work there part-time. In recent years, memorials for fallen firefighters have been held there. Laddermen have come from as far away as Oklahoma and Toronto to pay homage and carve their names in the restaurant's treasured wooden tables. In a memo to the owner of Chumley's dated October 1, 2008, the local Bedford Barrow Commerce Block Association recognized that the bar has become "[a] community memorial to our own heroic fallen firefighters."

In 2007, Chumley's closed temporarily for the repair of structural defects in the landmark-designated building. On May 10, 2012, Chumley's notified Community Board 2 (the Board) of its intention to apply for a liquor license for the reopened premises. On June 21, 2012, Chumley's appeared at a full Board meeting and presented its application for a license to operate, in a mixed-use building, a 2,000-square-foot restaurant with 58 table seats, a standing bar (no bar seats), and a maximum legal capacity of 74 people. There would be no sidewalk café or backyard garden, and it would play only recorded music at "background levels." Chumley's also submitted a petition, signed by roughly 250 neighboring residents, that states that granting the license would be in the public's best interest.

The Board and Chumley's then negotiated certain stipulations regarding operation of the establishment. On the same date, June 21, 2012, the 39-member Board unanimously adopted a resolution recommending denial of Chumley's application unless the stipulations were incorporated into its "Method of Operation" on the license. Specifically, Chumley's agreed to close at 1:00 a.m. Sunday through Wednesday, and 2:00 a.m. Thursday through Saturday, and to obtain all required certificates, permits and related documents, including a revised and approved certificate of occupancy upon completion of its renovations. Chumley's also agreed to keep the windows and doors closed at all times, to keep the kitchen open until one hour before closing, and to maintain security in front of the premises and a doorman inside. The Board notified the State Liquor Authority of its resolution.

On or about January 3, 2013, Chumley's filed its application with the Authority. Chumley's acknowledged that 86 Bedford Street is within 500 feet of at least three other establishments that serve liquor. Although, in such cases, the applicant must provide a written statement explaining why issuance of the license would be in the public interest, Chumley's did not provide such a statement at that time.

When the 500-foot rule is implicated, the Authority must hold a hearing to determine whether issuance of the license is in the public interest (see Alcoholic Beverage Control Law § 64 [7] [f]). The Authority scheduled a hearing for January 24, 2013. By letter dated January 4, 2013, the Authority notified the Board of the hearing, and advised the Board that it could testify through an officer, or submit a written statement of its position, if desired.

At the January 24, 2013 hearing, Chumley's submitted an affidavit by its manager, James Miller, who stated that granting the liquor license "promotes public convenience and advantage and is in the public interest" because: "the neighborhood is not saturated with liquor licenses," Chumley's would have all of its necessary permits and licenses, there would be no noticeable effect on traffic or parking in the area, existing noise levels would not increase, and there was no history of violations of the liquor law or reported crime on the premises. In a separate affidavit, Miller reaffirmed that he would adopt the previously described stipulations.

No one appeared on the Board's behalf, and no opposition to the application was raised at the hearing. By letter dated

October 24, 2013, the Authority informed Chumley's that its application was conditionally approved, i.e., that it would be approved upon Chumley's compliance with the stipulations, inter alia.

By petition dated February 21, 2014, petitioners commenced the instant proceeding to annul the Authority's conditional approval of the license. They alleged that there were at least 21 other licensed establishments within 500 feet of the premises and that the relevant statute recognizes that even three bars within 500 feet is over-saturation. Petitioners further noted that the other bars were on more commercial neighboring streets, such as Seventh Avenue South, but there were no bars on Bedford Street itself, and that the five restaurants on Bedford Street closed by 11:00 p.m. during the week and midnight on weekends. Thus, they alleged, if Chumley's stayed open later, it would undermine the peace and quiet on the block. In addition, they alleged that before Chumley's closed, it was a "major destination for tourists, undergraduates and barhopping bridge-and-tunnel partygoers," resulting in "unruly, drunk and extremely loud" crowds on the street.

Petitioners alleged that the Authority violated the Alcoholic Beverage Control Law by issuing the license without finding that it would further the public interest, and by failing to state and file the reasons for its determination. Thus, they argued, the determination was the result of an error of law, and was arbitrary and capricious and an abuse of discretion.

In its answer, the Authority admitted that it failed to state and file the reasons for its determination before issuing the conditional approval. Accordingly, in addition to the previously described correspondence, it annexed a memorandum, dated March 5, 2014, that provided its reasons and stated that the application had been approved. In concluding that issuance of the license would serve the public interest, the Authority noted that the Board unanimously recommended issuance of the license, subject to compliance with the stipulations. It further noted that Chumley's would renovate a physically collapsed building, that it had previously had a liquor license, that it would create jobs, that there was no history of criminal activity when it was licensed, and that there was substantial community support. Regarding the article 78 petitioners' concerns, the Authority noted that Chumley's had agreed that the business would close two to three hours before the regular citywide closing time, would keep its windows and doors closed at all times, and would have security in front of the building.

The Authority argued that its submission of the memorandum mooted the proceeding, and that the reasons had not been required, since it had not issued a license but had only conditionally approved it, subject to resolution of certain issues with the City Department of Buildings (DOB).

Chumley's argued that the stipulation addressed petitioners' concerns, as the Board recognized when it recommended granting the application. Citing the Authority's memorandum, Chumley's also asserted mootness as an affirmative defense.

In reply, petitioners claimed that they were not notified of Chumley's application, and that the Authority should not have relied on the Board's resolution or Miller's representations regarding the public interest without performing an independent inquiry.

At oral argument, petitioners advised that they were

> "not against Chumley's per se, if they want to operate in the same way that the other restaurants in the block operate; they close at midnight during the week—midnight on the weekends, 11:00 p.m. during the week. There would be no problem with Chumley's reopening under those kinds of stipulations."

The court denied the petition, reasoning that the Authority's initial failure to state and file its reasons for the conditional approval was not fatal because the license had not yet issued at that time, since approval was contingent on Chumley's obtaining all necessary DOB approvals and permits. The court noted that in any case the Authority had since stated its reasons, which were consistent with the relevant statutory criteria. The court noted that the Authority had considered the Board's unanimous resolution, subject to the stipulations, Miller's sworn assurances that Chumley's would abide by those stipulations, that there would be no noticeable effect on traffic, parking, or noise, and that there was no history of criminal activity at the location. The court also noted that in light of the lack of any opposition at the hearing, the Authority properly credited Chumley's representations at the hearing. We now affirm.

Ordinarily, applications for licenses to sell liquor for consumption on premises "shall be issued to all applicants except for good cause shown" (Alcoholic Beverage Control Law § 64 [1]); however, no such license shall be granted for any

premises within 500 feet of three or more existing licensed and operating premises, unless the Authority "determines that granting such license would be in the public interest" (Alcoholic Beverage Control Law § 64 [7] [b], [f]). In determining whether the granting of a license will promote the public interest, the Authority may consider:

> "(a) The number, classes and character of licenses in proximity to the location and in the particular municipality or subdivision thereof.
>
> "(b) Evidence that all necessary licenses and permits have been obtained from the state and all other governing bodies.
>
> "(c) Effect of the grant of the license on vehicular traffic and parking in proximity to the location.
>
> "(d) The existing noise level at the location and any increase in noise level that would be generated by the proposed premises.
>
> "(e) The history of liquor violations and reported criminal activity at the proposed premises.
>
> "(f) Any other factors specified by law or regulation that are relevant to determine the public convenience and advantage and public interest of the community" (Alcoholic Beverage Control Law § 64 [6-a]).

These factors are intended to guide the Authority "in assuring that appropriate factors are taken into consideration which relate to the business and the impact it has . . . [and] to assure that quality of life impacts are fully incorporated into the responsible state decision-making apparatus" (*Cleveland Place Neighborhood Assn. v New York State Liq. Auth.*, 268 AD2d 6, 10 [1st Dept 2000] [internal quotation marks omitted]).

In cases implicating this 500-foot rule, "[b]efore it may issue any such license, the [A]uthority shall conduct a hearing, upon notice to the applicant and the municipality or community board, and shall state and file in its office its reasons therefor" (Alcoholic Beverage Control Law § 64 [7] [f]).

"[A] reviewing court is not entitled to interfere in the exercise of discretion by an administrative agency unless there is no rational basis for the exercise, or the action complained of is arbitrary and capricious" (*Matter of Soho Alliance v New York State Liq. Auth.*, 32 AD3d 363, 363 [1st Dept 2006]). Courts

look to whether the determination "is without sound basis in reason and is generally without regard to the facts" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]).

Regarding the substance of the reasons stated by the Authority, this Court has held that something more than a "perfunctory recitation" is needed to comply with the requirement that the Authority state its reasons for concluding that issuance of a license would be in the public interest (*Matter of Waldman v New York State Liq. Auth.*, 281 AD2d 286, 286 [1st Dept 2001]).

Here, the Authority's written statement sets forth detailed, concrete reasons for its determination, made after a hearing, that issuance of a liquor license to Chumley's would be in the public interest (Alcoholic Beverage Control Law § 64 [7] [b], [f]). To the extent petitioner challenges the timing of the Authority's issuance of written reasons, we note that at that juncture, the Authority had only conditionally granted the license, in its October 24, 2013 letter, and subsequently stated its reasons in a memorandum dated March 5, 2014. The Authority also noted, among other things, that the reopening of Chumley's would renovate a previously vacant and physically collapsed building and would create employment opportunities, and that there was substantial community support for the reopening.

The Authority was entitled to rely on representations made in affidavits submitted by Chumley's at the hearing, since the statute does not require oral testimony, and neither petitioners nor the Board raised any reason to reject the representations in the affidavits. Moreover, in conditionally granting Chumley's application for a license, the Authority addressed petitioners' main, if not sole, concern: the potential for after-midnight noise stemming from late-night visitors to the bar on Bedford Street, a predominantly residential street. The Authority required Chumley's to abide by its agreement with the Board, which supported the application, to reduce the likelihood of outside street noise by such measures as keeping windows and doors closed, maintaining security on the premises, and closing by 2:00 a.m. Moreover, the bar/restaurant would not have any outdoor space, live music, or dancing, as noted in the Authority's written reasons.

Accordingly, the judgment of the Supreme Court, New York County (Barbara Jaffe, J.), entered August 26, 2014, denying

the petition to annul respondent New York State Liquor Authority's October 24, 2013 conditional approval of a liquor license to respondent Chumley's 86 LLC, d/b/a "Chumley's," and dismissing the proceeding brought pursuant to CPLR article 78, should be affirmed, without costs.

MAZZARELLI, J.P., SAXE, MANZANET-DANIELS and CLARK, JJ., concur.

Judgment, Supreme Court, New York County, entered August 26, 2014, affirmed, without costs.