**Matter of Senter v New York State Liq. Auth.**

2024 NY Slip Op 33302(U)

September 19, 2024

Supreme Court, New York County

Docket Number: Index No. 161325/2023

Judge: John J. Kelley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. JOHN J. KELLEY**                          PART                    56M

                                                                      *Justice*

-------------------------------------------------------------------------------X

In the Matter of                                                  INDEX NO.          161325/2023

JOHN B. SENTER, III, and MARY FRANCES LOFTUS,     MOTION DATE      07/12/2024

                              Petitioners,                         MOTION SEQ. NO.         001

                              - v -

NEW YORK STATE LIQUOR AUTHORITY and SUGAR          **DECISION, ORDER, AND**
MOUSE, LLC,                                                        **JUDGMENT**

                              Respondents.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32

were read on this motion to/for                    ARTICLE 78 (BODY OR OFFICER)                .

In this proceeding pursuant to CPLR article 78, the petitioners seek judicial review of a July 24, 2023 New York State Liquor Authority (SLA) determination conditionally approving the application of the respondent Sugar Mouse, LLC (Sugar Mouse), for an on-premises liquor license, permitting it to serve and sell alcoholic beverages at game room and bar located at 47 Third Avenue in Manhattan. The SLA and Sugar Mouth oppose the petition, and the SLA submits the administrative record. The petition is denied, and the proceeding is dismissed.

On August 11, 2022, the SLA sent a 30-day advance notice to Manhattan Community Board No. 3 (the Community Board), informing the Community Board that it anticipated receiving an application for a liquor license referable to premises located at 47 Third Avenue and, thus, within that Community Board's catchment area. On or about September 16, 2022, the SLA sent a revised notice to the Community Board and Sugar Mouth's attorney. On December 16, 2022, Sugar Mouth submitted an application for an on-premises liquor license to the SLA, proposing to open a game room and bar at 47 Third Avenue, which is located in the NoHo/East Village neighborhood of Manhattan. As set forth in the application, the proposed

**161325/2023   SENTER III, JOHN B. ET AL vs. NEW YORK STATE LIQUOR AUTHORITY ET AL**          Page 1 of 14
Motion No.  001

1 of 14

[* 1]

facility would have a maximum occupancy of 80 persons, with table seating for 40 persons at 20 tables, and a customer bar with 15 seats. In addition to providing space for games such as table tennis, billiards, and shuffleboard, the premises were anticipated to provide entertainment consisting of recorded music, a juke box, and disc jockeys, with dancing, but no electronic drums. In its application, the applicant indicated the establishment would be managed by the eight principals of Sugar Mouse, LLC.

On January 26, 2023, the 10th & Stuyvesant Streets Block Association (the block association) submitted a letter to the SLA, asserting that the subject neighborhood was saturated with facilities similar to that proposed by Sugar Mouse, and that its members were concerned with issue of pedestrian traffic, noise, and cleanliness should the license be approved. Specifically, it asserted that The Smith Restaurant, which is located on Third Avenue between 10th and 11th Streets, and which prior to the 2020-2021 COVID-19 pandemic had a seating capacity of 228, had added 100 seats in its outdoor dining pavilion within 500 feet Sugar Mouse's proposed venue. It further alleged that everything that Sugar Mouse proposed to offer to patrons

> "already exists in multiples in our community including places for families and neighbors to gather, live music (including free outdoor noontime concerts in summer co-sponsored by this Association and the Third Street Music School for 40 years), poetry, comedy, art shows, plus a myriad of restaurants at every price point serving other than microwaved pizza, and yes, a game room."

The block association additionally contended that the "long-established Amsterdam Billiards, just a stone's throw away on East 11th Street and Fourth Avenue," featured all of the same games that Sugar Mouse proposed to offer. In its letter, the block association provided further examples of duplicative facilities, noting that Webster Hall, which it characterized as a "cavernous" nightclub and concert venue, was situated on East 11th Street, just west of Third Avenue, and that, on most nights when there was concert scheduled at that venue, East 11th Street between Third and Fourth Avenues was closed to through traffic. It contended that the line of patrons waiting to get into Webster Hall snaked along Third Avenue to East 12th Street,

161325/2023  SENTER III, JOHN B. ET AL vs. NEW YORK STATE LIQUOR AUTHORITY ET AL          Page 2 of 14
Motion No.  001

2 of 14

rendering the vicinity "impassable" for cars and pedestrians. The block association additionally identified the Moxie Hotel as situated across the street from Webster Hall, explaining that the hotel has "no less than 5 alcohol serving restaurants and bars attracting a 'limousine crowd.'" According to the block association, if one considered only vicinity bounded by Third and Fourth Avenues, and East 10th and East 11th Streets, the neighborhood already sustained commercial establishments patronized "by literally thousands of people."

On January 26, 2023, the petitioner John Senter, III, a neighborhood resident, submitted a similar letter to the SLA, reiterating most of the contentions made by the block association, and identified additional venues that provided the same services as Sugar Mouse proposed to furnish. Additionally, on January 27, 2023, neighborhood resident Tasso Argyros submitted a similar letter to the SLA opposing the application, and repeated many of the same points that the block association and Senter had raised in their letters.

In accordance with the Alcoholic Beverage Control Law, the SLA sent a notice of an initial public hearing to the Community Board and the applicant. The SLA scheduled this hearing, known as a "500-foot hearing," to consider whether public convenience and advantage warranted the issuance of the license notwithstanding the fact that there were at least three other facilities with SLA licenses within 500 feet of Sugar Mouse's proposed game room and bar. Sugar Mouse posted notice of the filing of its application on the door of the subject premises. As later explained by SLA administrative law judge (ALJ) Beth S. Badner in her February 9, 2023 500-foot hearing report, "[p]ursuant to Advisory 2020-8, this hearing was [to be] conducted without appearances by any parties." That advisory statement, issued on June 1, 2020, provided, in relevant part, that,

> "[a]s a result of restrictions placed on public gatherings as a result of the coronavirus (also known as COVID-19), the Authority had postponed all previously scheduled 500 Foot Law hearings and refrained from scheduling any new hearings. The suspension of hearings has resulted in a delay of the processing of applications subject to the 500 Foot Law. To address the issue, the Authority will resume the required hearings under the following conditions:

**161325/2023   SENTER III, JOHN B. ET AL vs. NEW YORK STATE LIQUOR AUTHORITY ET AL          Page 3 of 14**
**Motion No.  001**

[* 3]

• Neither the applicant, the applicant's representative or anyone who wishes to be heard in support or opposition will be allowed to attend the hearing.

• All parties will be required to send written submissions.

• The submissions must be sent by email to Secretarys.office@sla.ny.gov.

• The applicant and the municipality in which the proposed licensed premises is located will receive notification by email that all submissions must be received within 15 days of the email notification.

• Applicants must complete and return a public interest questionnaire to Secretarys.office@sla.ny.gov by the deadline noted above. This questionnaire will replace any public interest statement that has already been submitted and no other document will be accepted as a substitute. If needed, the applicant can attach supplemental pages to the questionnaire. The Administrative Law Judge will not be reviewing any documents in the application that are on file with the Authority.

• After the deadline for submissions, the matter will be forwarded to an Administrative Law Judge for review and the issuance of a hearing report.

• Submissions not sent to Secretary's Office using the above email address, or any submissions received after the above deadline, will not be forwarded to the Administrative Law Judge for his/her consideration."

ALJ Badner thus prepared her February 9, 2023 report based on the public interest questionnaire that the applicant had submitted to the SLA, letters of opposition from Barbara Bova of the East Village Community Coalition, the petitioner Mary Fran Loftus, Tasso Argyros, Kathryn Cerick, Paul Bernstein, Andrew Hafter, Dympna Burkhart, Monica Rittersporn, Daniel Levy, Julie Dante, James Souce, Geoff Cooper, Laura Hoptman, Adam Heyman, and Renee Viola, and stipulations and resolutions submitted by the Community Board, which recommended that the SLA approve Sugar Mouse's application.

In her report, the ALJ wrote:

"[t]he premises will be operated as a tavern/game room in a mixed residential/commercial area within a 500-foot radius of 14 on-premises liquor establishments (10 restaurants, 3 tavern/bars, and 1 cabaret). The premises will be in the basement of an 8-story building with retail on the ground floor and residences on floors 2-8. The maximum occupancy will be 80. There will be 20 tables with 40 seats and 1 customer bar with 15 seats. There will be no outdoor area. There are no windows, and the doors will be kept closed.

**161325/2023   SENTER III, JOHN B. ET AL vs. NEW YORK STATE LIQUOR AUTHORITY ET AL**          Page 4 of 14
**Motion No.  001**

> "There will be recorded background music and a DJ (Thursday to Saturday only). There will be live music. There will be karaoke. There will be patron dancing. There will be 1-2 security guards employed. The establishment will possibly be rented out 1-2 times a month and possibly hire a promoter. Closing hours will be 1 AM Sunday to Thursday and 2 AM Friday to Saturday.

The report explained that the arguments in support of the application included the facts that the premises will be operated as a game room serving food, thus creating a "unique" eating and drinking experience for local residents. The ALJ noted that Sugar Mouse was an experienced licensee, with no adverse history, and that issuance of the license would "create new jobs and create tax revenue." She noted Sugar Mouse's contention that no negative information regarding the statutory factors articulated in Alcoholic Beverage Control Law § 64(6-a) had been presented to the SLA. The report also enumerated several contentions made in opposition to the issuance of the license, including the fact that 14 people who resided in the neighboring properties and neighborhood, as well as the East Village Community Coalition, submitted letters to the SLA adverting to the oversaturation of liquor licenses in the area, the adverse effect that patrons would have on the already limited number of on-street parking spaces, the noise that would emanate from the establishment, and the likely presence of intoxicated people who loitered and threw garbage onto the sidewalks.

The ALJ's report summarized the findings and recommendations of the Community Board. Those findings described additional aspects of Sugar Mouse's proposed operations, such as the fact that it would be serving pizza and fried snacks during all hours of operation, that the venue would provide three television sets, ambient music, a live disc jockey, and live performances of music, and that the game facilities that it would provide included shuffleboard, table tennis, billiards, and foosball. As the ALJ described it, the Community Board found that:

> "[t]he applicant agreed to move the entrance from East 10th Street to Third Avenue. The applicant runs a similar operation in Community District 3 called Sour Mouse at 110 Delancey Street, which was approved by Community Board and there have been zero commercial 311 complaints and no complaints to the community board. This applicant also operated Black Cat LES at 172 Rivington where there were zero commercial 311 complaints at this location with NYPD action necessary since 2018."

161325/2023 SENTER III, JOHN B. ET AL vs. NEW YORK STATE LIQUOR AUTHORITY ET AL     Page 5 of 14
Motion No. 001

5 of 14

Nonetheless, the ALJ's report noted that the Community Board also had found that

> "[a] representative of the 10th St and Stuyvesant Street Block Association wrote a letter and submitted a petition with more than 100 signatures from nearby residents in opposition to the application, the committee received 30 emails from nearby residents against the application (but many of which cited the proposed method of operation as a 'nightclub' which is inaccurate), and 152 residents of East 9th Street signed a petition in opposition to this application. 17 nearby residents, including a representative from the 10th St and Stuyvesant Street Block Association spoke against the applicant because they did not want a late night business disrupting quality of life on East 10th Street some of whom cited evidence of bar crawl participation at the applicant's other operation at 110 Delancey Street (https://www.eventbrite.com/e/officialhalloween-bar-craw@·new-york-ny-4-dates-tickets-232008703277) contrary to stipulations but upon being made aware promised to rectify."

Conversely, the ALJ recited the Community Board's finding that one resident spoke in support of the applicant because she had been a longtime patron of one of the applicant's other businesses, known as the Black Cat and located on the Lower East Side, while 61 residents who lived within two blocks of the location, including 28 residents who lived above the premises at 101 East 10th Street, signed a petition in favor of the application.

In addition, the ALJ reiterated promises that Sugar Mouse made to the Community Board, and which it agreed to include in its SLA license, that it would operate as a bar and game hall, with a full kitchen serving pizza and fried snacks during all hours of operation, and that it would open no later than from 2:00 p.m. every day, close by 1:00 a.m. from Sunday to Thursday, and close by 2:00 a.m. on Fridays and Saturdays. Sugar Mouse further stipulated that it would provide no outdoor dining, it would have no open doors or windows, except the entrance door, which would be closed in any event by 10:00 p.m. or when amplified sound was broadcasting, and that its only entrance would be on Third Avenue, while any entrance on East 10th Street would be prohibited. Sugar Mouse further stipulated that it intended to present both recorded music and live music, and have scheduled performances seven days each week, consisting of amplified live music, standup comedy nights, and music on Fridays and Saturdays, along with occasional events promoted by third parties and events for which fees might be

161325/2023   SENTER III, JOHN B. ET AL vs. NEW YORK STATE LIQUOR AUTHORITY ET AL          Page 6 of 14
  Motion No.  001

[* 6]

6 of 14

charged by the event organizer.  Sugar Mouse agreed that it would not apply for any alteration in its method of operation, or for any physical alterations, without first appearing before the Community Board.  It stipulated that it would not host pub crawls or party buses, would not offer unlimited drink specials with food or provide patrons with "happy hours," and would ensure that there were no waiting queues in front of its establishment.  In addition, Sugar Mouse stipulated that it would designate an employee to ensure that patrons and passersby did not loiter, generate excessive noise, or create crowding outside of its premises.  Sugar Mouse promised that it would conspicuously post its written stipulation with the Community Board alongside its liquor license on a wall inside of the premises, would provide a telephone number for residents to call with complaints, and would immediately address all such complaints.

In her report, the ALJ concluded that,

> "[a]lthough there is opposition to this application, the Community Board and the applicant have agreed to a comprehensive list of stipulations.  *These stipulations will be made a part of the approved method of operation if this license is issued*, and the applicant will be subject to disciplinary action or possible non-renewal of the license if it failed to comply with the approved method of operation.  I find that these stipulations adequately address the concerns of the opposition.

> "Furthermore, the applicant principals are experienced licensees with no adverse history with the Authority.  The Community Board also states that the principals' other establishments have no 311 complaints.

> "Based on the record before me, including the public interest statement, and considering the provisions of Section 64 (6-a) of the ABC Law and the relevant facts and circumstances set forth above, it is concluded the Applicant has met the statutory burden of demonstrating that public convenience, advantage, and the public interest will be served by the granting of this application"

(emphasis added).

In a letter to Sugar Mouse dated July 10, 2023, the SLA identified several documentary deficiencies in the license application, and directed Sugar Mouse to rectify those deficiencies before July 31, 2023.  Sugar Mouse timely responded to the deficiency letter and rectified the deficiencies that had been identified.  Hence, on July 24, 2023, the SLA issued a conditional letter of approval, in which it indicated that it would approve the application, provided that Sugar

[* 7]

Mouse's submitted of a copy of its original New York State filing receipt, updated "Newspapers Affidavits" that included the relevant serial number, the telephone number of the business premises, and photographs of the interior and exterior of the premises, demonstrating that the establishment was ready to open and operate, including depictions of the restrooms and the gaming, eating, bar, food preparation, and liquor storage areas, as well as a photograph of the exterior photo depicting the new name of the premises. The petitioners commenced this proceeding on November 17, 2023. In their answers, both of the respondents asserted, as an affirmative defense, that the proceeding was premature.

Sugar Mouse satisfied the conditions set forth in the July 24, 2023 letter. On December 12, 2023, and, thus, while this proceeding was pending, the SLA issued a supplemental conditional approval letter that included all of the conditions to which Sugar Mouse had stipulated. The supplemental approval letter imposed the additional condition that Sugar Mouse would construct a fully enclosed façade over the sole entrance and install soundproofing in the ceiling to further reduce noise. On January 22, 2024, the SLA board of commissioners granted the application, and issued License No. 0340-24-101498 to Sugar Mouse.

"To challenge an administrative determination, the agency action must be final and binding upon the petitioner" (*Matter of East Ramapo Cent. Sch. Dist. v King*, 29 NY3d 938, 939, [2017] [citation and internal quotation marks omitted]; *see also* CPLR 7801[1]). "A 'final and binding' determination is one where the agency 'reached a definitive position on the issue that inflicts actual, concrete injury,' and the injury may not be 'significantly ameliorated by further administrative action or by steps available to the complaining party'" (*Matter of Center for Discovery, Inc. v New York City Dept. of Educ*., 162 AD3d 83, 86 [1st Dept 2018], quoting *Walton v New York State Dept. of Correctional Servs*., 8 NY3d 186, 194 [2007]). Contrary to the respondents' contentions, this proceeding was not premature, since the issuance of a conditional approval of a liquor license is considered to be a determination that is final and binding. In this respect, the "petitioners were aggrieved by the Authority's finding, over their

161325/2023 SENTER III, JOHN B. ET AL vs. NEW YORK STATE LIQUOR AUTHORITY ET AL     Page 8 of 14
Motion No. 001

8 of 14

[* 8]

opposition, that issuance of the liquor license was in the public interest, and there was no further administrative recourse available to them and no further necessary nonministerial action by the Authority" (*Matter of Clark v New York State Liquor Auth.,* 165 AD3d 488, 488 [1st Dept 2018]).

The respondents' remaining affirmative defenses are without merit.

With respect to the merits of the proceeding, where, as here, an administrative determination is made, and there is no statutory requirement of a trial-type hearing, that determination must be confirmed unless it is arbitrary and capricious, affected by an error of law, or made in violation of lawful procedure (*see* CPLR 7803[3]; *Matter of Adirondack Wild Friends of the Forest Preserve v New York State Adirondack Park Agency,* 34 NY3d 184, 191 [2019]; *Matter of Madison County Indus. Dev. Agency v State of N.Y. Auths. Budget Off*., 33 NY3d 131, 135 [2019]; *Matter of Lemma v Nassau County Police Officer Indem. Bd*., 31 NY3d 523 [2018]; *Matter of McClave v Port Auth. of N.Y. & N.J*., 134 AD3d 435, 435 [1st Dept 2015]; *Matter of Batyreva v New York City Dept. of Educ*., 50 AD3d 283 [1st Dept 2008]; *Matter of Rumors Disco v New York State Liquor Auth*., 232 AD2d 421 [2d Dept 1996]; *Matter of Capizzi v New York State Div. of Alcoholic Beverage Control*, 231 AD2d 881 [4th Dept 1996]; *Matter of Ban The Bar Coalition v New York State Liquor Auth*., 12 Misc 3d 1192[A], 2006 NY Slip Op 51544[U], *8 [Sup Ct, N.Y. County, Aug. 9, 2006]; *see also Matter of Graca v State Liquor Auth*., 32 AD2d 879 [4th Dept 1969]; *Matter of Soho Alliance v New York State Liquor Auth*., 10 Misc 3d 1078[A}, 2005 NY Slip Op 52253[U] [Sup Ct, N.Y. County, Nov. 17, 2005], *revd other grounds*, 32 AD3d 363 [1st Dept 2006]; *Matter of Flatiron Community Assn. v New York State Liquor Auth*., 6 Misc 3d 267 [Sup Ct, N.Y. County 2004]).

Inasmuch as the petitioner made no allegations that the SLA committed an error of law, the SLA's determination to approve the subject application for an on-premises license must be confirmed unless it was made in violation of lawful procedure (*see Matter of Exclusive Ambulette Serv., Inc. v New York State Dept. of Health*, 170 AD3d 721, 722-723 [2d Dept 2019]), or was arbitrary and capricious (*see Matter of Farina v State Liq. Auth*., 20 NY2d 484

[* 9]

[1967]; *Matter of Urbanite Wine Merchants, Inc. v New York State Liquor Auth*., 189 AD3d 593, 593-594 [1st Dept 2020]; *Matter of White Plains Fine Wine & Spirits LLC v New York State Liquor Auth.,* 184 AD3d 1068, 1069 [2d Dept 2020]; *Matter of BarFreeBedford v New York State Liquor Auth*., 130 AD3d 71, 71 [1st Dept 2015]; *Matter of Pizzaguy Holdings, LLC v New York State Liquor Auth*., 39 AD3d 1072 [3d Dept 2007]), that is, it was not rationally based on, or supported by, facts in the record (*see Matter of Gorelik v New York City Dept. of Bldgs.*, 128 AD3d 624, 624 [1st Dept 2015]), or was based on a consideration of impermissible factors (*see Matter of Kaufman v Incorporated Vil. of Kings Point*, 52 AD3d 604, 608 [2d Dept 2008]).

The petitioners have not established that they were provided with insufficient notice or deprived of a meaningful opportunity to be heard prior to the deadline for submissions with respect to the 500-foot hearing and, hence, there is no basis for their contention that the SLA's determination was made in violation of lawful procedure (*see Matter of Exclusive Ambulette Serv., Inc. v New York State Dept. of Health*, 170 AD3d at 722-723; *Matter of Tully Constr. Co., Inc. v Hevesi,* 214 AD2d 465, 466 [1st Dept 1995]). Nor is there any merit to the petitioners' contention that Sugar Mouse's application was facially deficient because it did not include a statement as to why the issuance of the license would be in the public interest. In any event, any purported deficiency was rectified by Sugar Mouse's supplemental submissions.

In determining whether the SLA may issue a liquor license, Alcoholic Beverage Control Law § 64(7)(b) provides, in relevant part, that "[n]o retail license for on-premises consumption shall be granted for any premises which shall be . . .in a city . . . having a population of twenty thousand or more within five hundred feet of three or more existing premises licensed and operating pursuant to this section." Alcoholic Beverage Control Law § 64(7)(f) provides, however, that, "if, after consultation with the municipality or community board, [the SLA] determines that granting such license would be in the public interest," and conducts an appropriate hearing, the SLA may issue a license despite the presence of three or more licensed establishments within 500 feet of the applicant's proposed establishment.

161325/2023 SENTER III, JOHN B. ET AL vs. NEW YORK STATE LIQUOR AUTHORITY ET AL Page 10 of 14
Motion No. 001

10 of 14

[* 10]

Consequently, with respect to this court's application of the "arbitrary and capricious" standard, the SLA, in granting the application for a new on-premises license, was required rationally to have determined, upon consideration of appropriate factors, that the proposed facility would promote the "public convenience and advantage" (*Matter of Cleveland Place Neighborhood Assn. v New York State Liquor Auth*., 268 AD2d 6, 9-10 [4th Dept 2000]; Alcoholic Beverage Control Law § 64[6-a]). The concept of public convenience involves considerations such as the distance between licensed facilities and the issues of pricing, accessibility to certain products, and overcrowding at existing facilities, while the concept of public advantage involves considerations such as creating a "more open market and an increase in competition in the retail sale of liquor in the interest of the consumer" (*Matter of Forman v New York State Liquor Auth*., 17 NY2d 224, 230 [1966]; *see Matter of Circus Disco, Ltd. v New York State Liquor Auth*., 51 NY2d 24, 33 [1980] [public convenience and advantage requires "justice for the consumer"]).

In determining "whether public convenience and advantage and the public interest will be promoted" by the granting of a license, the SLA may consider any or all of the following factors:

> "(a) The number, classes and character of licenses in proximity to the location and in the particular municipality or subdivision thereof.
>
> "(b) Evidence that all necessary licenses and permits have been obtained from the state and all other governing bodies.
>
> "(c) Effect of the grant of the license on vehicular traffic and parking in proximity to the location.
>
> "(d) The existing noise level at the location and any increase in noise level that would be generated by the proposed premises.
>
> "(e) The history of liquor violations and reported criminal activity at the proposed premises.
>
> "(f) Any other factors specified by law or regulation that are relevant to determine the public convenience and advantage and public interest of the community"

(Alcoholic Beverage Control Law § 64 [6-a]).

**161325/2023 SENTER III, JOHN B. ET AL vs. NEW YORK STATE LIQUOR AUTHORITY ET AL** **Page 11 of 14**
Motion No. 001

11 of 14

> "These factors were enacted into law by amendment in 1993 as a result of the decision of the Court of Appeals in *Matter of Circus Disco v New York State Liq. Auth*. (51 NY2d 24). The Court held that the SLA could not deny a license on the ground that it believed community residents would be adversely affected by the noise, parking problems and traffic that would be generated by an establishment permitted by governing zoning regulations, because noise, parking and traffic were matters for the consideration of the zoning authorities (1993 NY Legis Ann, at 515). Section 64 (6-a) is intended to guide the SLA in assuring 'that appropriate factors are taken into consideration which relate to the business and the impact it has … [and] to assure that quality of life impacts are fully incorporated into the responsible state decision-making apparatus' (*ibid*.)"

(*Matter of Cleveland Place Neighborhood Assn. v New York State Liquor Auth*., 268 AD2d at 9-10; *see Mater of BarFreeBedford v New York State Liquor Auth*., 130 AD3d at 77]).

Notwithstanding the State's "present legislative policy in favor of greater price competition in the sale of alcoholic beverages, toward licensing more package liquor stores" and other establishments that sell alcoholic beverages (*Matter of Sinacore v New York State Liquor Auth*., 21 NY2d 379, 384 [1968]; s*ee Matter of Hub Wine & Liquor Co v State Liquor Auth*., 16 NY2d 112, 117 [1965]), the saturation of a neighborhood with liquor stores and bars may warrant the denial of a license application (*see Matter of Forman v New York State Liquor Auth*., 17 NY2d at 230; *cf. Matter of K&C Liquors, Inc. v New York State Liquor Auth.,* 2018 NY Slip Op 51175[U] [Sup Ct, Bronx County, Jul. 18, 2018] [SLA's consideration of market saturation in denying license application was proper, but matter is remitted to SLA to consider the fact that it issued a license to another applicant in the neighborhood under similar circumstances, as well as the accuracy of existing stores' gross sales data]; *Matter of Chenango Wine & Liquor, Inc. v Johnson City Wine Partners, LLC*, 2014 NY Slip Op 50095[U], 42 Misc 3d 1219[A] [Sup Ct, Broome County, Jan. 30, 2014] [responding to potential market saturation by requiring license applicant to surrender another license to a nearby store that it also owned]).

Nonetheless, as explained by Justice Gische in *Matter of Rose Ancona, Inc. v New York State Liquor Auth*. (2010 NY Slip Op 31024[U] [Sup Ct, N.Y. County, Apr. 22, 2010]),

> "the NYSLA cannot blindly apply distance restrictions to protect existing liquor business in a particular area because such 'arbitrary and compulsory distances between package stores . . . have no present purpose except to restrict

[* 12]

competition' (*In the Matter of Hub Wine & Liquor v State Liquor Authority*, 16 NY2d at 117).  The NYSLA can, however, consider evidence that liquor sales in the immediately surrounding area where the applicant wants to open a new store are unlikely to sustain an additional store and that the existing liquor stores are adequately serving the public's needs, convenience and advantage (*In the Matter of George B. Hansen v New York State Liquor Authority*, 77 AD2d 703 [3rd Dept 1980])."

The record supports the SLA's determination that the market is not saturated in the NoHo/East Village neighborhood in the vicinity bounded by Third and Fourth Avenues and East 10th and 11th Streets (*see Matter of BarFreeBedford v New York State Liquor Auth*., 130 AD3d at 75-78; *Matter of Hansen v State Liquor Auth*., 77 AD2d 703, 704 [3d Dept 1980]).

In *Matter of BarFreeBedford v New York State Liquor Auth*. (130 AD3d at 75-78), the Appellate Division, First Department, affirmed a judgment denying a neighborhood association's CPLR article 78 petition, pursuant to which it had sought to annul the SLA's issuance of an on-premises license to a retro-themed speakeasy on Bedford Street in Greenwich Village.  The petitioners there contended that there were already 21 SLA-licensed establishments within a 500-foot radius of the proposed location, and that the relevant statute recognized that even 3 such establishments constituted saturation.  There, as here, the applicant had met with the relevant Community Board.  There, as here,

> "[t]he Authority required [the applicant] to abide by its agreement with the Board, which supported the application, to reduce the likelihood of outside street noise by such measures as keeping windows and doors closed, maintaining security on the premises, and closing by 2:00 a.m.  Moreover, the bar/restaurant would not have any outdoor space, live music, or dancing, as noted in the Authority's written reasons"

(*id*. at 78; *see Matter of Eldridge St. Block Assn. v New York State Liquor Auth*., 2022 NY Slip Op 34206[U], *10-11, 2022 NY Misc LEXIS 7786, *17-18 [Sup Ct, N.Y. County, Dec. 12, 2022] [Kelley, J.]).  There, as here, the issuance of the license would permit a previously vacant space to be put to a useful commercial purpose.  By addressing these issues, the SLA has provided something more than a mere "perfunctory recitation" of the reasons supporting the rationality of its determination (*Matter of BarFreeBedford v New York State Liquor Auth*., 130 AD3d at 78;

**161325/2023   SENTER III, JOHN B. ET AL vs. NEW YORK STATE LIQUOR AUTHORITY ET AL**            Page 13 of 14
  **Motion No.  001**

*see Matter of Waldman v New York State Liq. Auth.*, 281 AD2d 286, 286 [1st Dept 2001]), and the determination was supported by facts in the record. Consequently, its determination was not arbitrary and capricious, and the petition must be denied.

Accordingly, it is,

ORDERED that the petition is denied; and it is,

ADJUDGED that the proceeding is dismissed.

This constitutes the Decision, Order, and Judgment of the court.

| 9/19/2024 | | |
|---|---|---|
| **DATE** | | **JOHN J. KELLEY, J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | X DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**161325/2023  SENTER III, JOHN B. ET AL vs. NEW YORK STATE LIQUOR AUTHORITY ET AL**  Page 14 of 14
**Motion No.  001**

14 of 14